**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF GEORGIA, STATE OF COLORADO, AND STATE OF SOUTH CAROLINA, | C/A No. 6:18-cv-00165-TMC |
| Plaintiffs, | |
| *ex rel.* ROBERT MATHEWSON, | |
| Plaintiff-Relator, | |
| v. | |
| PREMIER MEDICAL, INC., KEVIN S. MURDOCK, FREEDOM MEDICAL LABS, LLC, ROBERT ALAN RICHARDSON, AND EDWARD BURCH, | |
| Defendants. | |

**STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL**

WHEREAS, this Stipulation and Order of Settlement and Dismissal (Stipulation) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively, the United States), the State of South Carolina, the State of Georgia, and the State of Colorado (together, the States) (the States and United States collectively the Plaintiffs or Governments), and Defendant Robert Alan Richardson (Richardson), and Defendant Freedom Medical Labs, LLC (Freedom Medical) (hereafter collectively referred to as the Parties), through their authorized representatives;

WHEREAS, Richardson marketed and sold laboratory services by and through several corporations that he owned or co-owned, including but not limited to Friendly Medical, LLC, Freedom Medical, AR & EB, LLC, and Sole Marketing, LLC. Richardson's marketing companies

caused federal healthcare programs to be billed for various services, including cancer genomic testing (CGX).

WHEREAS, on January 18, 2018, Karen Mathewson filed a qui tam complaint pursuant to the FCA's qui tam provisions, 31 U.S.C. § 3730(b), against Premier Medical, Inc. (Premier Medical), captioned *United States ex rel. Mathewson v. Premier Medical, Inc.*, No. 6:18-cv-00165 (D.S.C.) (the Mathewson Civil Action). On June 19, 2019, Robert Mathewson was substituted for Karen Mathewson as the relator in the Mathewson Civil Action pursuant to Federal Rule of Civil Procedure 25(a)(1). In a Second Amended Complaint, filed on February 10, 2021, Relator added defendants Kevin S. Murdock, Michael Conroy, and Dakota White.

WHEREAS, on March 24, 2021, the United States, the State of Georgia, and the State of Colorado entered a Joint Notice of Partial Intervention. Those plaintiffs intervened on the claims that defendants violated the Anti-Kickback Statute (the AKS), 42 U.S.C. § 1320a-7b and the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, by submitting claims for laboratory services tainted by illegal kickbacks. Those plaintiffs also intervened in the part of the action alleging that Premier Medical submitted claims to federal healthcare programs for services that were not rendered. The Governments declined to intervene against Defendant Dakota White.

WHEREAS, on July 29, 2021, the State of South Carolina moved to intervene in the action and the Court granted its motion on July 30, 2021.

WHEREAS, on July 30, 2021, the Governments filed a Joint Complaint in Intervention in *United States ex rel. Mathewson v. Premier Medical, Inc., et al.*, naming additional defendants Richardson, Edward Burch, and Freedom Medical, and alleging a scheme involving CGX testing that was not alleged in the Mathewson Civil Action.

2

WHEREAS, on August 1, 2022, Richardson was indicted and charged with violations of the AKS and other charges in the Middle District of Tennessee related to Richardson's marketing of CGX tests by and through Freedom Medical.

WHEREAS, on August 14, 2024, Richardson pleaded guilty to one count of conspiracy to defraud the United States by paying and receiving kickbacks in violation of the AKS in violation of 18 U.S.C. § 371, and one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.

WHEREAS, the Governments contend that Richardson and Freedom Medical caused false claims to be submitted for payment to the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 (Medicaid) in violation of the federal False Claims Act; the Georgia Medicaid program, in violation of the Georgia State False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, et seq.; the Colorado Medicaid program, in violation of the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5 et seq.; and the South Carolina Medicaid program, in violation of the South Carolina Code Section 43-7-60.

WHEREAS, the Governments contend that they have certain civil claims against Richardson and Freedom Medical arising from their causing the submission, or conspiring to submit or cause the submission, of false claims, and/or false statements or records material to those claims, to Medicaid programs from June 11, 2018, and September 19, 2019, by (1) providing and receiving illegal remuneration that was tied to the referral of CGX testing claimed by Premier Medical in violation of the AKS, 42 U.S.C. § 1320a-7b; and (2) causing claims to be billed to federal and state healthcare programs by Premier Medical for CGX testing that was not medically necessary and/or not performed as alleged in the Joint Complaint in Intervention and referred to herein as the "Covered Conduct";

3

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims asserted against Richardson and Freedom Medical arising from the Covered Conduct;

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

### TERMS AND CONDITIONS

1.     The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2.     Richardson and Freedom Medical do not contest and therefore accept responsibility for the following conduct:

a.     From at least January 2018, and continuing thereafter until December of 2019, in the District of South Carolina and elsewhere, Richardson, Freedom Medical, and others knowingly and willfully conspired with each other to: 1) violate the AKS, 42 U.S.C. § 1320a-7b(b)(2), by knowingly and willfully offering and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part by the federal and state healthcare program Medicaid; and 2) violated the FCA, 31 U.S.C. § 3729 *et seq.*, the Georgia State False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, et seq., the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5 et seq., and South Carolina Code Section 43-7-60, by knowingly causing to be presented materially false and fraudulent claims for payment or approval to Medicaid programs that were not reasonable and necessary for the diagnosis or treatment of individual patients and that lacked a legitimate medical purpose.

b.     Richardson owned or co-owned several companies, including Defendant Freedom Medical, Friendly Medical, LLC, AR & EB, LLC, and Sole Marketing, LLC. Beginning

4

in the summer of 2018, Richardson, Freedom Medical, and others conspired with Kevin S. Murdock (Murdock), owner of Premier Medical, to target Medicaid beneficiaries in states with favorable reimbursement for CGX testing and to solicit them for their genetic material so that it could be tested and billed to Medicaid programs.

c.     Richardson and Freedom Medical knowingly and willfully received commission kickbacks from Premier Medical, at the direction of Murdock, to induce the referral of CGX tests to Premier Medical for billing to state and federal healthcare programs. Between March 9, 2018, and September 24, 2019, Richardson, Freedom Medical, and other corporations or trusts owned by Richardson received approximately Three Million Seven Hundred Thousand Dollars ($3,700,000) in payments from Premier Medical at the direction of Murdock, in exchange for the referral of CGX tests that were billed to and paid by state Medicaid programs, to include Georgia, Colorado, and South Carolina.    Richardson and Freedom Medical knew of the wrongfulness of receiving these payments.

d.     Richardson and Freedom Medical knowingly and willfully offered and paid cash kickbacks, often twenty dollars ($20), to Medicaid beneficiaries, particularly in the states of Georgia, Colorado, and South Carolina, in exchange for their genetic material and personal information necessary to file a claim to state Medicaid programs. To obscure the kickback, Richardson claimed the cash payment was for the beneficiary to complete a survey.  The real purpose was to induce the Medicaid beneficiary to provide their DNA and personal information. The cash inducement allowed marketers for Freedom Medical to collect hundreds of samples from Medicaid beneficiaries per week.

e.     Richardson and Freedom Medical knowingly and willfully offered and paid cash kickbacks to a broker in exchange for signed doctor's orders for CGX tests and caused

5

Premier Medical to submit false claims to state and federal healthcare programs, to include Georgia, Colorado, and South Carolina Medicaid programs. Over the course of the scheme, Richardson, Freedom Medical, and others paid the broker approximately Four Hundred Thousand Dollars ($400,000) in exchange for signed doctor's orders.

        f.     In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the District of South Carolina and elsewhere: (i) In July 2018, Richardson sent an email to Murdock and others with the subject line "Starting Engine" where Richardson noted that Premier Medical would be making a "[l]ist of top paying Medicaids" and where Murdock agreed to pay a small upfront reimbursement, which would be "vital in the beginning," predicting "we could potentially hit a 1,000 a month in 2 months versus 4"; (ii) together with others, Richardson and Freedom Medical made a plan to do a "boots on the ground" street marketing campaign to gather DNA samples for CGX testing directly from Medicaid beneficiaries and shared that plan with Murdock; (iii) on September 6, 2018, when Murdock learned Colorado Medicaid paid an average of $7,400 per DNA sample, Murdock texted Richardson and said, "We need to put your plan back in action"; (iv) on September 18, 2018, Richardson traveled to Greenville to meet with Murdock and others to work on the details of Freedom Medical's campaign to travel to high paying Medicaid states and collect samples directly from Medicaid beneficiaries; (v) Premier Medical reviewed the paperwork Richardson and Freedom Medical planned to use. including a survey, which stated, "You are receiving $20 for completing the survey"; also including a page requiring individuals to sign an acknowledgment that "I have not received any compensation for lab testing"; (vi) between October 2018 and September 2019, Freedom Medical marketers, at Richardson's direction, solicited Medicaid beneficiaries for their genetic material and personal information and induced them to provide the

same with cash payments; (vii) Richardson, Freedom Medical, and others paid a broker a fee per signed doctor's order for CGX testing and provided those signed orders to Premier Medical which then submitted claims to federal and state healthcare programs; (viii) and Richardson and Freedom Medical knew the Medicaid beneficiaries did not have a treating relationship with the ordering healthcare provider, the tests did not have a legitimate medical purpose, and the Medicaid beneficiaries did not receive the results of the tests.

g.     With respect to the numbered paragraphs 2(a) through 2(f), Richardson and Freedom Medical admit and acknowledge that the conduct described in these paragraphs constitutes misrepresentations, fraudulent omissions and/or deceptive conduct; Richardson and Freedom Medical do not contest that they knew this conduct was false and/or deceptive; Richardson, Freedom Medical, and others engaged in this conduct with an intent to deceive the Governments and to cause the Governments to pay false or fraudulent federal healthcare program claims; the Governments justifiably relied on this conduct in paying those claims; this reliance proximately caused damage to the United States and the States; Richardson, Freedom Medical, and others took each of the actions constituting the Covered Conduct with the subjective intent to cause harm to the Governments and/or the subjective knowledge that harm to the Governments was certain to occur; and the conduct was wrongful, done intentionally, injurious to the Governments, and taken without just cause and excuse. Richardson and Freedom Medical admit that this conduct violates 31 U.S.C. § 3729(a)(1)(A), (B) & (C), the Georgia State False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, et seq., the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5 et seq., and South Carolina Code Section 43-7-60. Richardson and Freedom admit that they and their co-conspirators entered into conspiracies to present or cause to be presented false or fraudulent claims for payment or approval to Medicare and Medicaid—and to make, use, and cause

to be made or used false records or statements in support of those claims—and performed acts in furtherance of these conspiracies.

       3.      Richardson and Freedom Medical shall pay to the United States the sums specified in this Paragraph (collectively, the Settlement Amount), under the terms and conditions specified herein, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the District of South Carolina.

       a.      Richardson and Freedom Medical shall pay to the United States within ten (10) calendar days of the Effective Date the sum of Thirty Thousand Dollars ($30,000.00) (Initial Payment).

       b.      Richardson and Freedom Medical shall pay to the United States the sum of One Million Five Hundred Thousand Dollars ($1,500,000), plus simple interest at four and five-eighths percent (4.625%) per annum, calculated daily, from the Effective Date and continuing until and including the day of payment, pursuant to the payment schedule attached as Exhibit A (each a "Payment Over Time" and collectively the "Payments Over Time"). The Payments Over Time may be prepaid, in whole or in part, without penalty or premium.

       c.      After receipt of the Initial Payment, and for each of the Payments Over Time (together, Payments), the United States will hold for and then disburse to the States of Colorado, Georgia, and South Carolina their proportional share of the Payments, including the States' proportional share of interest. Each States' proportional share is as follows:

       i.      Forty-seven and nine-tenths percent (47.9%) of each Payment is restitution for false claims to the Georgia Medicaid program. Of that portion, the United States retains fifty-seven and six-tenths percent

(57.6%) and shall distribute forty-two and four-tenths percent (42.4%) to the State of Georgia.

ii.    Fifty-one and three-tenths percent (51.3%) of each Payment is restitution for false claims to the Colorado Medicaid Program. Of that portion, the United States retains forty percent (40%) and shall distribute sixty percent (60%) to the State of Colorado.

iii.    Eight-tenths percent (.8%) of each Payment is restitution for false claims to the South Carolina Medicaid Program. Of that portion, the United States retains seventy-one and two-tenths percent (71.2%) and shall distribute twenty-eight and eight-tenths percent (28.8%) to the State of South Carolina.

d.    <u>Acceleration Clause:</u> For each period of three hundred sixty-five (365) calendar days in the five (5) years following the Effective Date of this Stipulation (each an Annual Contingency Period and collectively, Total Contingency Period), within ten (10) calendar days following the end of an Annual Contingency Period, Richardson shall e-mail the undersigned counsel for the United States (or anyone the United States identifies to receive service) a written summary (Annual Report), including a signed certification confirming the accuracy of its contents subject to 18 U.S.C. § 1001, in the form of Exhibit B attached hereto that indicates whether Richardson received income from a Liquidating Event of OC Botanicals, LLC (d/b/a Hi Tide Dispensary) or Bullfrog AI Holdings, Inc., Bullfrog AI, Inc., Bullfrog AI Management, LLC, or any of these corporations' current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors. For purposes of this Stipulation, a Liquidating Event includes the conversion of stocks

9

to cash, distributions from a sale of the company, an initial public offering, distributions related to a merger or acquisition, or any other trade that results in dispensation of funds. If a Liquidating Event occurs during the Total Contingency Period, Richardson shall pay to the United States 80% of the proceeds, net of taxes, within fourteen (14) days of receipt of the proceeds (Accelerated Payment). The Accelerated Payment shall be applied to the last payment first.

      i.   Any amount paid to the United States under this Acceleration Clause will be distributed according to the formulas set forth in Paragraph 3(c)(i)–(iii).

      e.   <u>Contingency Clause</u>: The Annual Report shall also indicate whether spousal or dependent support obligations have decreased per the Voluntary Custody and Separation Agreement between Richardson and Altera Amicarelli, dated December 13, 2022, or any revisions thereto. Beginning the month following any decrease of obligation, Richardson shall increase quarterly payments to the United States by Three Thousand Dollars ($3,000) per month, to be added to the Payments over Time.

      i.   Any amount paid to the United States under this Contingency Clause will be distributed according to the formulas set forth in Paragraph 3(c)(i)–(iii).

      f.   All Payments made by Richardson and Freedom Medical under subparagraphs 3(a)–(e) are restitution to the United States and the States.

      4.   Richardson and Freedom Medical shall execute and agree to the entry of a consent judgment in favor of the United States and the States and against Richardson and Freedom Medical in the amount of Eight Million Dollars ($8,000,000.00), a copy of which is attached hereto as Exhibit C (Richardson and Freedom Medical Consent Judgment). The United States and the States

may use the Richardson and Freedom Medical Consent Judgment to obtain a security interest in any asset or property of Richardson and Freedom Medical but shall not engage in other collection activity with respect to the Richardson and Freedom Medical Consent Judgment so long as Richardson and Freedom Medical fully comply with the terms of this Stipulation. Should Richardson and Freedom Medical comply fully with the payment terms in Paragraph 3 above and the other terms of this Stipulation, the Richardson and Freedom Medical Consent Judgment shall be deemed to be satisfied in full.

5.      Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and subject to Paragraph 7 (concerning disclosure of assets), Paragraph 18 (concerning default), and Paragraph 19 (concerning bankruptcy) below, and conditioned on Richardson's and Freedom Medical's full compliance with the terms of this Stipulation, including full and timely payments to the United States of the Settlement Amount pursuant to Paragraph 3 above, the United States and the States release Richardson and Freedom Medical from any civil or administrative monetary claim the United States and the States have for the Covered Conduct under the FCA, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Georgia State False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, et seq., the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5 et seq., and South Carolina Code Section 43-7-60, or the common law theories of payment by mistake, unjust enrichment, and fraud.

6.      Notwithstanding the releases given in Paragraph 5 of this Stipulation, or any other term of this Stipulation, the following claims and rights of the United States and States are specifically reserved and are not released:

11

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code) and the state revenue codes of Colorado, Georgia, and South Carolina;

b.      Any criminal liability;

c.      Except as explicitly stated in this Stipulation, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal healthcare programs;

d.      Any liability to the United States (or its agencies) and the States of Colorado, Georgia, and South Carolina (or their agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Stipulation;

f.      Any liability of individuals who are not party to this Stipulation; and

g.      any civil or administrative liability that any person or entity has or may have to the States of Colorado, Georgia and South Carolina, or to individual consumers or state program payors under any statute, regulation, or rule not expressly covered by the release in Paragraph 5 above, including, but not limited to, any and all of the following claims: (i) claims involving unlawful or illegal conduct based on State or federal antitrust violations; and (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws.

7.

7.      Richardson and Freedom Medical have provided sworn financial disclosures and supporting documents (collectively, Financial Disclosures) to the United States, and the United States and the States have relied on the accuracy and completeness of those Financial Disclosures

12

in reaching this Stipulation. Richardson and Freedom Medical warrant that such Financial Disclosures are complete, accurate, and current as of the Effective Date of this Stipulation. If the Governments learn of asset(s) in which Richardson and Freedom Medical had an interest of any kind as of the Effective Date of this Stipulation (including, but not limited to, promises by insurers or other third parties to satisfy Richardson and Freedom Medical's obligations under this Stipulation) that were not disclosed in such Financial Disclosures, or if the Governments learn of any false statement or misrepresentation by Richardson and Freedom Medical on, or in connection with, such Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in such Financial Disclosures by Ten Thousand Dollars ($10,000.00) or more, the Governments may at their option: (a) rescind this Stipulation and reinstate their suit or file suit based on the Covered Conduct or (b) collect the full Settlement Amount in accordance with the Stipulation plus one hundred percent (100%) of the net value of Richardson's and Freedom Medical's previously undisclosed assets. Richardson and Freedom Medical agree not to contest any collection action undertaken by the Governments pursuant to this provision, and agree that they will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' and the States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States and the States, pursuant to this Paragraph rescind their Stipulation, Richardson and Freedom Medical waive and agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States or the States within 120 calendar days of written notification to Richardson and Freedom

13

Medical that this Stipulation has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on June 30, 2021.

8.     Richardson and Freedom Medical waive and shall not assert any defenses Richardson and Freedom Medical may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

9.     Richardson and Freedom Medical fully and finally release the United States and the States, their agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Richardson and Freedom Medical have asserted, could have asserted, or may assert in the future against the United States and the States or, their agencies, officers, agents, employees, and servants, related to the Covered Conduct or the Governments' investigation or prosecution thereof.

10.     In compromise and settlement of the rights of OIG-HHS to exclude Freedom Medical pursuant to 42 U.S.C. § 1320a-7(b)(7), based upon the Covered Conduct, Freedom Medical agrees to be excluded under this statutory provision from Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f), for a period of 7 years. The exclusion shall be effective upon the Effective Date of this Agreement.

a.     Such exclusion shall have national effect.  Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered, or prescribed by Freedom Medical in any capacity while Freedom Medical is excluded.  This payment prohibition applies to Freedom Medical and all other individuals and

entities (including, for example, anyone who employs or contracts with Freedom Medical, and any hospital or other provider where Freedom Medical provides services). The exclusion applies regardless of who submits the claim or other request for payment. Violation of the conditions of the exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion. Freedom Medical further agrees to hold the Federal health care programs, and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective date of the exclusion. Freedom Medical waives any further notice of the exclusion and agrees not to contest such exclusion either administratively or in any state or federal court.

        b.      Reinstatement to program participation is not automatic. If Freedom Medical wishes to be reinstated, Freedom Medical must submit a written request for reinstatement to the OIG in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Such request may be made to the OIG no earlier than 90 days prior to the expiration of the 7-year period of exclusion. Reinstatement becomes effective upon application by Freedom Medical, approval of the application by the OIG, and notice of reinstatement by the OIG. Obtaining another license, moving to another state, or obtaining a provider number from a Medicare contractor, a state agency, or a Federal health care program does not reinstate Freedom Medical's eligibility to participate in these programs.

        11.     Freedom Medical waives and shall not assert any defenses Freedom Medical may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of

the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

12.     Freedom Medical fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Freedom Medical has asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof.

13.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE, or any state payer, related to the Covered Conduct; and Richardson and Freedom Medical agree not to resubmit to any Medicare contractor, TRICARE, or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

14.     Richardson and Freedom Medical agree to the following:

a.     Unallowable Costs Defined:     All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Richardson and Freedom Medical or their present or former agents in connection with:

(1)     the matters covered by this Stipulation and any related plea agreement;

16

(2) the United States' or the States' audit(s) and any civil or criminal investigation(s) of the matters covered by this Stipulation;

(3) Richardson's and Freedom Medical's investigation, defense, and corrective actions undertaken in response to the United States' or States' audit(s) and any civil or criminal investigation(s) in connection with the matters covered by this Stipulation (including attorneys' fees);

(4) the negotiation and performance of this Stipulation and any plea agreement; and

(5) the payment Richardson and Freedom Medical makes to the United States and the States pursuant to this Stipulation are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b. <u>Future Treatment of Unallowable Costs:</u> Unallowable Costs shall be separately determined and accounted for by Richardson and Freedom Medical, and Richardson and Freedom Medical shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Richardson and Freedom Medical or any of his companies, subsidiaries, or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Richardson and Freedom Medical further agree that within 90 days of the Effective Date of this Stipulation Richardson shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers,

17

and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Richardson and Freedom Medical or any of their companies, subsidiaries, or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Richardson and Freedom Medical agree that the United States, at a minimum, shall be entitled to recoup from Richardson and Freedom Medical any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Richardson and Freedom Medical or any of their companies, subsidiaries, or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Richardson and Freedom Medical or any of their companies, subsidiaries, or affiliates' cost reports, cost statements, or information reports.

     d.    Nothing in this Stipulation shall constitute a waiver of the rights of the United States or the States to audit, examine, or re-examine Richardson's and Freedom Medical's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15.    Richardson and Freedom Medical agree to cooperate fully, truthfully, completely, and forthrightly with the United States' and States' investigation(s) of, and/or legal proceeding(s)

against, individuals and entities not released in this Stipulation. Upon request by the Governments and reasonable notice, Richardson and Freedom Medical shall be available for interviews by the Governments and shall fully, truthfully, completely, and forthrightly answer questions. Upon request by the Governments and reasonable notice, Richardson and Freedom Medical shall testify under oath fully, truthfully, completely, and forthrightly at any and all trials of cases or other court proceedings, including depositions, at which their testimony may be deemed relevant by the Governments. Richardson agrees to encourage, and not impair, the cooperation of Freedom Medical's directors, officers, and employees, and to use his best efforts to make available, and encourage, the cooperation of Freedom Medicals' former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Richardson further agrees to furnish to the Governments, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in his possession, custody, or control relating to Premier Medical, current and former Premier Medical employees, or any owner, executive, employee, or agent of the foregoing entities.

16.     This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 17 (waiver for beneficiaries), below.

17.     Richardson and Freedom Medical agree that they waive and shall not seek payment for any of the healthcare billings covered by this Stipulation from any healthcare beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

18.     The Settlement Amount represents the amount the United States and the States are willing to accept in compromise of their civil claims arising from the Covered Conduct due solely

19

to Richardson's and Freedom Medical's financial condition as reflected in the Financial Disclosures referenced in Paragraph 7 above.

a.     Richardson and Freedom Medical shall be in default of this Stipulation if they fail to make the required payments set forth in Paragraph 3 above on or before the due date for such payments, or if either fail to comply materially with any other term of this Stipulation (Default). The United States will provide a written Notice of Default, and Richardson and Freedom Medical shall have an opportunity to cure such Default within ten (10) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under this Stipulation up to the date of payment. Notice of Default will be delivered to Richardson and Freedom Medical, or to such other representative as Richardson and Freedom Medical shall designate in advance in writing. If Richardson and Freedom Medical fail to cure the Default within ten (10) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States and the States to a modified payment schedule (Uncured Default), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of twelve percent (12%) per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b.     In the event of Uncured Default, Richardson and Freedom Medical agree that the United States or the States, at their discretion, may (i) retain any payments previously made, rescind this Stipulation and pursue the Complaint or bring any civil and/or administrative claim, action, or proceeding against Richardson and Freedom Medical for the claims that would otherwise be covered by the releases provided in Paragraph 5 above with any recovery reduced by the amount of any payments previously made by Richardson and Freedom Medical to the United States under

this Stipulation; (ii) take any action to enforce this Stipulation in a new action or by reinstating the Complaint; (iii) offset the remaining unpaid balance from any amounts due and owing to Richardson and Freedom Medical and/or affiliated companies by any department, agency, or agent of the United States or States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. Richardson and Freedom Medical shall not contest any offset imposed or any collection undertaken by the United States or States pursuant to this Paragraph, either administratively or in any Federal or State court. The United States and the States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States or the States pursue a collection action, Richardson and Freedom Medical agree immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' or States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the Governments opt to rescind this Stipulation pursuant to this Paragraph, Richardson and Freedom Medical waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States or States against Richardson and Freedom Medical within one hundred twenty (120) days of written notification that this Stipulation has been rescinded, and (ii) related to the Covered Conduct, except to the extent these defenses were available on July 30, 2021.

c.     In the event of Uncured Default, OIG-HHS may exclude Richardson and Freedom Medical from participating in all Federal healthcare programs until Richardson and Freedom Medical pay the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusion to Richardson and Freedom Medical.

21

Richardson and Freedom Medical waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Richardson and Freedom Medical wish to apply for reinstatement, they must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Richardson and Freedom Medical will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Stipulation or otherwise available.

19.    In exchange for valuable consideration provided in this Stipulation, Richardson and Freedom Medical acknowledge the following:

a.    Richardson and Freedom Medical have reviewed their financial situations and warrant that they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

b.    In evaluating whether to execute this Stipulation, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Richardson and Freedom Medical, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.    The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.    The Parties do not intend to hinder, delay, or defraud any entity to which Richardson and Freedom Medical were or became indebted to on or after the date of any transfer contemplated in this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

22

e.      If Richardson's and Freedom Medical's obligations under this Stipulation are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Richardson's, Freedom Medical's, or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Richardson's and Freedom Medical's debts, or to adjudicate Richardson and Freedom Medical as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Richardson and Freedom Medical or for all or any substantial part of Richardson's and Freedom Medical's assets:

(i) the United States and the States may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Richardson and Freedom Medical for the claims that would otherwise be covered by the releases provided in Paragraph 5 above; and

(ii) the United States and the States have an undisputed, non-contingent, and liquidated allowed claim against Richardson and Freedom Medical in the amount of $140,294,162 less any payments received pursuant to this Stipulation, provided, however, that such payments are not otherwise avoided and recovered from the United States or States by Richardson and Freedom Medical, a receiver, trustee, custodian, or other similar official for Richardson and Freedom Medical.

f.      Richardson and Freedom Medical agree that any civil and/or administrative claim, action, or proceeding brought by the United States or States under Paragraph 219(e) is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Richardson and Freedom Medical shall not argue or otherwise

contend that the United States' or States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consent to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Richardson and Freedom Medical waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States or States within 120 days of written notification to Richardson and Freedom Medical that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on July 30, 2021.

20.     Except as provided in Paragraphs 7 and 18 above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

21.     Each Party and signatory to this Stipulation represents that it freely and voluntarily enter into this Stipulation without any degree of duress or compulsion.

22.     This Stipulation is governed by the laws of the United States. The exclusive venue for any dispute relating to this Stipulation is the United States District Court for the District of South Carolina. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23.     This Stipulation constitutes the complete agreement between the Parties. This Stipulation may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Stipulation shall not constitute a waiver of rights under this Stipulation.

24.     The undersigned counsel represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

25.     This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.

26.     This Stipulation is binding on Richardson and Freedom Medical's successors, transferees, heirs, and assigns.

27.

27.     All Parties consent to the United States' or the States' disclosure of this Stipulation, and information about this Stipulation, to the public.

28.     This Stipulation is effective on the date upon which the Stipulation is approved by the Court (Effective Date). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

### THE UNITED STATES OF AMERICA

DATED: 3/31/25          BY: _____

BETH C. WARREN
Assistant United States Attorney
Office of the United States Attorney
District of South Carolina

DATED: 3/28/25          BY: SUSAN GILLIN
Digitally signed by SUSAN GILLIN
Date: 2025.03.28 17:46:04 -04'00'

SUSAN E. GILLIN
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

### THE STATE OF SOUTH CAROLINA

DATED: **3/25/2025**    BY: _____
SCOTT TALBERT
Assistant General Counsel
SOUTH CAROLINA DEPT. OF HEALTH AND
HUMAN SERVICES

DATED: 3/26/2025    BY: _____
STEPHANIE OPET
Assistant Deputy Attorney General
Medicaid Fraud Control Unit
South Carolina Attorney General's Office

## THE STATE OF GEORGIA

DATED: _____    BY: _____
RUSSELL CARLSON
Commissioner
Georgia Department of Community Health

DATED: _____    BY: _____
JIM MOONEY
Deputy Attorney General
Office of the Attorney General for the State of Georgia
Medicaid Fraud Division

## THE STATE OF COLORADO

DATED: _____    BY: _____
KIM BIMESTEFER
Executive Director
Colorado Department of Health Care Policy and Financing

DATED: _____    BY: _____
CRYSTAL LITTRELL
First Assistant Attorney General/Director

DATED: _____    BY: _____
                            SCOTT TALBERT
                            Assistant General Counsel
                            SOUTH CAROLINA DEPT. OF HEALTH AND
                            HUMAN SERVICES

DATED: _____    BY: _____
                            STEPHANIE OPET
                            Assistant Deputy Attorney General
                            Medicaid Fraud Control Unit
                            South Carolina Attorney General's Office

## THE STATE OF GEORGIA

DATED: 3/25/2025    BY: _____
                            RUSSEL CARLSON
                            Commissioner
                            Georgia Department of Community Health

DATED: 3/25/2025    BY: _____
                            JIM MOONEY
                            Deputy Attorney General
                            Office of the Attorney General for the State of Georgia
                            Medicaid Fraud Division

## THE STATE OF COLORADO

DATED: _____    BY: _____
                            KIM BIMESTEFER
                            Executive Director
                            Colorado Department of Health Care Policy and Financing

DATED: _____    BY: _____
                            CRYSTAL LITTRELL
                            First Assistant Attorney General/Director

26

DATED: _____    BY:    _____
                                  SCOTT TALBERT
                                  Assistant General Counsel
                                  SOUTH CAROLINA DEPT. OF HEALTH AND
                                  HUMAN SERVICES

DATED: _____    BY:    _____
                                  STEPHANIE OPET
                                  Assistant Deputy Attorney General
                                  Medicaid Fraud Control Unit
                                  South Carolina Attorney General's Office

## THE STATE OF GEORGIA

DATED: _____    BY:    _____
                                  RUSSELL CARLSON
                                  Commissioner
                                  Georgia Department of Community Health

DATED: _____    BY:    _____
                                  JIM MOONEY
                                  Deputy Attorney General
                                  Office of the Attorney General for the State of Georgia
                                  Medicaid Fraud Division

## THE STATE OF COLORADO

DATED: 03/27/2025    BY:    _K/Bimx_____
                                  KIM BIMESTEFER
                                  Executive Director
                                  Colorado Department of Health Care Policy and Financing

DATED: _____    BY:    _____
                                    CRYSTAL LITTRELL
                                  First Assistant Attorney General/Director

26

DATED: _____     BY: _____
                          SCOTT TALBERT
                          Assistant General Counsel
                          SOUTH CAROLINA DEPT. OF HEALTH AND
                          HUMAN SERVICES

DATED: _____     BY: _____
                          STEPHANIE OPET
                          Assistant Deputy Attorney General
                          Medicaid Fraud Control Unit
                          South Carolina Attorney General's Office

## THE STATE OF GEORGIA

DATED: _____     BY: _____
                          RUSSELL CARLSON
                          Commissioner
                          Georgia Department of Community Health

DATED: _____     BY: _____
                          JIM MOONEY
                          Deputy Attorney General
                          Office of the Attorney General for the State of Georgia
                          Medicaid Fraud Division

## THE STATE OF COLORADO

DATED: _____     BY: _____
                          KIM BIMESTEFER
                          Executive Director
                          Colorado Department of Health Care Policy and Financing

DATED: 03-25-2025     BY: *Crystal Littrell*
                          CRYSTAL LITTRELL
                          First Assistant Attorney General/Director

26

Medicaid Fraud Control Unit
Colorado Attorney General's Office

### ROBERT ALAN RICHARDSON - DEFENDANT

DATED: 3-21-25     BY: _____
Robert Alan Richardson

DATED: 3/21/25     BY: _____
Derek Shoemake
Counsel for Robert Alan Richardson

### FREEDOM MEDICAL LABS, LLC - DEFENDANT

DATED: 3-21-25     BY: _____
Robert Alan Richardson
Owner

DATED: 3/21/25     BY: _____
Derek Shoemake
Counsel for Freedom Medical Labs, LLC

IT IS SO ORDERED, this 11th day of  April , 2025.

_____
Timothy M. Cain
Chief United States District Judge

27

**EXHIBIT A**

Settlement Agreement
Payment Schedule

| No. | Date | Payment | Interest 4.625% | Principal | Balance |
|---|---|---|---|---|---|
| | | | | | $ 1,530,000.00 |
| Within 10 Calendar Days of the Effective Date | TBD | $    30,000.00 | $          - | $    30,000.00 | 1,500,000.00 |
| 1 | 7/1/2025 | 65,000.00 | - | 65,000.00 | 1,435,000.00 |
| 2 | 10/1/2025 | 81,728.56 | 16,728.56 | 65,000.00 | 1,370,000.00 |
| 3 | 1/1/2026 | 80,970.82 | 15,970.82 | 65,000.00 | 1,305,000.00 |
| 4 | 4/1/2026 | 79,882.36 | 14,882.36 | 65,000.00 | 1,240,000.00 |
| 5 | 7/1/2026 | 89,298.22 | 14,298.22 | 75,000.00 | 1,165,000.00 |
| 6 | 10/1/2026 | 88,581.03 | 13,581.03 | 75,000.00 | 1,090,000.00 |
| 7 | 1/1/2027 | 87,706.71 | 12,706.71 | 75,000.00 | 1,015,000.00 |
| 8 | 4/1/2027 | 86,575.17 | 11,575.17 | 75,000.00 | 940,000.00 |
| 9 | 7/1/2027 | 85,838.97 | 10,838.97 | 75,000.00 | 865,000.00 |
| 10 | 10/1/2027 | 85,083.77 | 10,083.77 | 75,000.00 | 790,000.00 |
| 11 | 1/1/2028 | 84,209.45 | 9,209.45 | 75,000.00 | 715,000.00 |
| 12 | 4/1/2028 | 83,244.54 | 8,244.54 | 75,000.00 | 640,000.00 |
| 13 | 7/1/2028 | 82,379.73 | 7,379.73 | 75,000.00 | 565,000.00 |
| 14 | 10/1/2028 | 81,586.51 | 6,586.51 | 75,000.00 | 490,000.00 |
| 15 | 1/1/2029 | 80,712.19 | 5,712.19 | 75,000.00 | 415,000.00 |
| 16 | 4/1/2029 | 79,732.71 | 4,732.71 | 75,000.00 | 340,000.00 |
| 17 | 7/1/2029 | 88,920.48 | 3,920.48 | 85,000.00 | 255,000.00 |
| 18 | 10/1/2029 | 87,972.67 | 2,972.67 | 85,000.00 | 170,000.00 |
| 19 | 1/1/2030 | 86,981.78 | 1,981.78 | 85,000.00 | 85,000.00 |
| 20 | 4/1/2030 | 85,969.35 | 969.35 | 85,000.00 | - |
| | Total | 1,702,375.02 | 172,375.02 | 1,530,000.00 | |

**EXHIBIT B**

**ANNUAL REPORT**

***Time Period of Report: From [month, year  ] to [month, year]***

*(List Start and End Dates of Annual Contingency Period)*

Report-Paragraph  3(c)(l)

☐     I, Robert Alan Richardson, **did not** receive income from a Liquidating Event of OC Botanicals, LLC (d/b/a Hi Tide Dispensary) or Bullfrog AI Holdings, Inc., Bullfrog AI, Inc., Bullfrog AI Management, LLC, or any of these corporations' current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors. A Liquidating Event includes the conversion of stocks to cash, distributions from a sale of the company, an initial public offering, distributions related to a merger or acquisition, or any other trade that results in dispensation of funds.

☐     I, Robert Alan Richardson, **did** receive income from a liquidating event of OC Botanicals, LLC (d/b/a Hi Tide Dispensary) or Bullfrog AI Holdings, Inc., Bullfrog AI, Inc., Bullfrog AI Management, LLC, or any of these corporations' current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors. A Liquidating Event includes the conversion of stocks to cash, distributions from a sale of the company, an initial public offering, distributions related to a merger or acquisition, or any other trade that results in dispensation of funds.

| Date of Transaction | Transaction Description | Amount Received | Date Money Received | Amount Owed to Governments* |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

\* If a liquidating even occurs during the Total Contingency Period, Richardson shall pay to the United States 80% of the proceeds, net of taxes, within 14 days ("Accelerated Payment"). The Accelerated Payment shall be applied to the last payment first.

Report-Paragraph  3(d)

☐     I, Robert Alan Richardson, report that my spousal and dependent support obligations **have not** decreased per the Voluntary Custody and Separation Agreement between me and Altera Amicarelli dated December 13, 2022, or any revisions thereto.

☐     I, Robert Alan Richardson, report that my spousal and dependent support obligations have decreased per the Voluntary Custody and Separation Agreement between me and Altera Amicarelli dated December 13, 2022, or any revisions thereto. Therefore, I will begin paying an additional $3,000 per month on the month following her move, added to the Payments Over Time.

## **EXHIBIT B**

I hereby certify, under the penalty of perjury, and subject to 18 U.S.C. § 1001, that the foregoing Report is truthful, accurate, and complete.

Signature     _____

Name (Print)     _____

Date     _____

## EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

UNITED STATES OF AMERICA, STATE OF
GEORGIA, STATE OF COLORADO, AND
STATE OF SOUTH CAROLINA,

C/A No. 6:18-cv-00165-TMC

Plaintiffs,

*ex rel.* SUSAN MATHEWSON,

Plaintiff-Relator,

v.

PREMIER MEDICAL, INC., KEVIN S. MURDOCK,
FREEDOM MEDICAL LABS, LLC, ROBERT ALAN
RICHARDSON, AND EDWARD BURCH,

Defendants.

## CONSENT JUDGMENT

Upon the consent of the plaintiffs United States, the states of Colorado, Georgia, and South

Carolina, and defendants Robert Alan Richardson and Freedom Medical, it is hereby:

ORDERED, ADJUDGED, and DECREED that plaintiff United States of America, the

states of Colorado, Georgia, and South Carolina are awarded judgment in the amount of

$8,000,000 against defendants Robert Alan Richardson and Freedom Medical. Robert Alan

Richardson and Freedom Medical are jointly and severally liable for this amount.

BROOK B. ANDREWS

Acting United States Attorney
District of South Carolina

By: Beth C. Warren

BETH C. WARREN (#11360)
NANCY COTE (#12530)
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Telephone (803) 929-3037
E-mail: Beth.C.Warren@usdoj.gov

CHRISTOPHER M. CARR
Attorney General
State of Georgia

Sara Vann
Senior Assistant Attorney General
Georgia Bar No. 141787
600 West Peachtree St.
20th Floor
Atlanta, Georgia 30308
Telephone: (404) 458-3755
E-mail: svann@law.ga.gov
Admitted *Pro Hac Vice*

PHILIP J. WEISER
Attorney General
State of Colorado

Lauren Nicole Jones
Assistant Attorney General
Colorado Bar No. 58444
Office of the Attorney General, MFCU
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone.: (720) 508-6741
E-mail: lauren.jones@coag.gov
Admitted *Pro Hac Vice*

Hannah Logue Perng
Assistant Attorney General
Colorado Bar No. 61004
Office of the Attorney General, MFCU
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone.: (720) 508-6195
E-mail: hannah.perng@coag.gov

ALAN WILSON
Attorney General

2

State of South Carolina

Stephanie G. Opet (#13502)
Timothy Brandon Steen (#13634)
Assistant Deputy Attorneys General
Medicaid Fraud Control Unit
South Carolina Office of the Attorney
General
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-3405
E-mail: SGoddard@scag.gov

By:     _____
        Derek Shoemake
        *Attorney for Robert Alan Richardson and
        Freedom Medical, Inc.*

**IT IS SO ORDERED**, this ⟨11th⟩ day of ⟨April⟩, 2025.

        _____
        Timothy M. Cain
        Chief United States District Judge

3