### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF GEORGIA, STATE OF COLORADO, AND STATE OF SOUTH CAROLINA, | C/A No. 6:18-cv-00165-TMC |
| Plaintiffs, | |
| *ex rel.* SUSAN MATHEWSON, | |
| Plaintiff-Relator, | |
| v. | |
| PREMIER MEDICAL, INC., KEVIN S. MURDOCK, FREEDOM MEDICAL LABS, LLC. ROBERT ALAN RICHARDSON. AND EDWARD BURCH, | |
| Defendants. | |

### STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL

WHEREAS, this Stipulation and Order of Settlement and Dismissal (Stipulation) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively, the United States), the State of South Carolina, the State of Georgia, and the State of Colorado (together, the States) (the States and United States, collectively the Plaintiffs or Governments), and Defendant Edward Burch (Burch) (hereafter collectively referred to as the Parties), through their authorized representatives:

WHEREAS, Burch marketed and sold laboratory services by and through several corporations that he owned or co-owned, including but not limited to Freedom Medical Labs, LLC, AR & EB, LLC, and Sole Marketing, LLC. Burch caused federal and state healthcare programs to be billed for various services, including cancer genomic testing (CGX).



WHEREAS, on January 18, 2018, Karen Mathewson filed a qui tam complaint pursuant to the False Claims Act's qui tam provisions, 31 U.S.C. § 3730(b), against Premier Medical, Inc. (Premier Medical), captioned *United States ex rel. Mathewson v. Premier Medical, Inc.*, No. 6:18-cv-00165 (D.S.C.) (the Mathewson Civil Action). On June 19, 2019, Robert Mathewson was substituted for Karen Mathewson as the relator in the Mathewson Civil Action pursuant to Federal Rule of Civil Procedure 25(a)(1). In a Second Amended Complaint, filed on February 10, 2021, Relator added defendants Kevin S. Murdock, Michael Conroy, and Dakota White. On April 15, 2025, ~~Linda~~ **SUSAN** Mathewson was substituted for Robert Mathewson as the relator in the Mathewson Civil Action pursuant to Federal Rule of Civil Procedure 25(a)(1).

WHEREAS, on March 24, 2021, the United States, the State of Georgia, and the State of Colorado entered a Joint Notice of Partial Intervention. Those plaintiffs intervened on the claims that defendants violated the Anti-Kickback Statute (the AKS), 42 U.S.C. § 1320a-7b and the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, by submitting claims for laboratory services tainted by illegal kickbacks. Those plaintiffs also intervened in the part of the action alleging that Premier Medical submitted claims to federal healthcare programs for services that were not rendered. The Governments declined to intervene against Defendant Dakota White.

WHEREAS, on July 29, 2021, the State of South Carolina moved to intervene in the action and the Court granted its motion on July 30, 2021.

WHEREAS, on July 30, 2021, the Governments filed a Joint Complaint in Intervention in *United States ex rel. Mathewson v. Premier Medical, Inc., et al.*, naming additional defendants Burch, Robert Alan Richardson, and Freedom Medical, and alleging a scheme involving CGX testing that was not alleged in the Mathewson Civil Action.

2

WHEREAS, on August 1, 2022, Burch was indicted and charged with violations of the Anti-Kickback Statute, 42 U.S.C. §1320a-7b (AKS) and other charges in the Middle District of Tennessee related to Burch's marketing of CGX tests by and through Freedom Medical.

WHEREAS, on August 19, 2024, Burch pleaded guilty to one count of conspiracy to defraud the United States by paying and receiving kickbacks in violation of the AKS in violation of 18 U.S.C. § 371, and one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.

WHEREAS, the Governments contend that Burch caused false claims to be submitted for payment to the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 (Medicaid) in violation of the federal False Claims Act, 31 U.S.C. §§3729–33 (FCA); the Georgia Medicaid program, in violation of the Georgia State False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, et seq.; the Colorado Medicaid program, in violation of the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5 et seq.; and the South Carolina Medicaid program, in violation of the South Carolina Code Section 43-7-60.

WHEREAS, the Governments contend that they have certain civil claims against Burch arising from his causing the submission, or conspiring to submit or cause the submission, of false claims, and/or false statements or records material to those claims, to Medicaid programs from June 11, 2018, and September 19, 2019, by (1) providing and receiving illegal remuneration that was tied to the referral of CGX testing claimed by Premier Medical in violation of the AKS, 42 U.S.C. § 1320a-7b; and (2) causing claims to be billed to federal and state healthcare programs by Premier Medical for CGX testing that was not medically necessary and/or not performed as alleged in the Joint Complaint in Intervention and referred to herein as the "Covered Conduct";

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable

3

resolution addressing the claims asserted against Burch arising from the Covered Conduct;

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

### TERMS AND CONDITIONS

1.      The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2.      Burch does not contest and therefore accepts responsibility for the following conduct:

a.      From April 2018, and continuing thereafter until December of 2019, in the District of South Carolina and elsewhere, Burch knowingly and willfully conspired with Robert Alan Richardson, Freedom Medical Labs, LLC, Premier Medical, Inc., Michael Conroy, and Kevin Murdock to: 1) violate the AKS, 42 U.S.C. § 1320a-7b(b)(2), by knowingly and willfully offering and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part by the federal and state healthcare program, Medicaid; and 2) to violate the FCA, 31 U.S.C. § 3729–33, the Georgia State False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, et seq., the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5 et seq., and South Carolina Code Section 43-7-60, by knowingly causing to be presented materially false and fraudulent claims for payment or approval to Medicaid programs that were not reasonable and necessary for the diagnosis or treatment of individual patients and that lacked a legitimate medical purpose.

b.      Burch owned or co-owned several companies, including Defendant Freedom Medical Labs, LLC, AR & EB, LLC, and Sole Marketing, LLC. Beginning in the summer of 2018, Burch, Freedom Medical, and others conspired with Kevin S. Murdock



(Murdock), owner of Premier Medical, to target Medicaid beneficiaries in states with favorable reimbursement for CGX testing and to solicit them for their genetic material so that it could be tested and billed to Medicaid programs.

      c.    Burch knowingly and willfully received commission kickbacks from Premier Medical, at the direction of Murdock, to induce the referral of CGX tests to Premier Medical for billing to state and federal healthcare programs. Between November 15, 2018, and September 24, 2019, Burch, Freedom Medical, and other corporations or co-owned by Burch received approximately Three Million Three Hundred Sixty Thousand Dollars ($3,360,000) in payments from Premier Medical at the direction of Murdock, in exchange for the referral of CGX tests that were billed to and paid by state Medicaid programs, to include Georgia, Colorado, and South Carolina. Burch knew of the wrongfulness of receiving these payments.

      d.    Burch knowingly and willfully offered and paid cash kickbacks, often twenty dollars ($20), to Medicaid beneficiaries, particularly in the states of Georgia, Colorado, and South Carolina, in exchange for their genetic material and personal information necessary to file a claim to state Medicaid programs. To obscure the kickback, Burch claimed the cash payment was for the beneficiary to complete a survey. The real purpose was to induce the Medicaid beneficiary to provide their DNA and personal information. The cash inducement allowed marketers for Freedom Medical to collect hundreds of samples from Medicaid beneficiaries per week.

      e.    Burch knowingly and willfully offered and paid cash kickbacks to a broker in exchange for signed doctor's orders for CGX tests and caused Premier Medical to submit false claims to state and federal healthcare programs, to include Georgia, Colorado, and South Carolina Medicaid programs. Over the course of the scheme, Burch and others paid the

broker approximately Four Hundred Thousand Dollars ($400,000) in exchange for signed doctor's orders.

   f. In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the District of South Carolina and elsewhere: (i) Burch worked with Kevin Murdock, Michael Conroy, Alan Richardson, and others to promote CGX testing for Premier Medical; (ii) together with others, Burch made a plan to do a "boots on the ground" street marketing campaign to gather DNA samples for CGX testing directly from Medicaid beneficiaries and shared that plan with Murdock and others; (iii) on September 18, 2018, Burch and Richardson traveled to Greenville to meet with Murdock, Conroy, and others to work on the details of Freedom Medical's campaign to travel to high paying Medicaid states and collect samples directly from Medicaid beneficiaries; (iv) employees of Premier Medical reviewed the paperwork Burch planned to use, including a survey, which stated, "You are receiving $20 for completing the survey"; also including a page requiring individuals to sign an acknowledgment that "I have not received any compensation for lab testing"; (v) between October 2018 and September 2019, Freedom Medical marketers, at Burch's direction, solicited Medicaid beneficiaries for their genetic material and personal information and induced them to provide the same with cash payments; (vi) Burch and others paid a broker a fee per signed doctor's order for CGX testing and provided those signed orders to Premier Medical which then submitted claims to federal and state healthcare programs; (vii) and Burch knew the Medicaid beneficiaries did not have a treating relationship with the ordering healthcare provider, the tests did not have a legitimate medical purpose, and the Medicaid beneficiaries did not receive the results of the tests.

g.     With respect to the numbered paragraphs 2(a) through 2(f), Burch admits and acknowledges that the conduct described in these paragraphs constitutes misrepresentations, fraudulent omissions and/or deceptive conduct; Burch does not contest that he knew this conduct was false and/or deceptive; Burch engaged in this conduct with an intent to deceive the Governments and to cause the Governments to pay false or fraudulent federal healthcare program claims; the Governments justifiably relied on this conduct in paying those claims; this reliance proximately caused damage to the United States and the States; Burch took each of the actions constituting the Covered Conduct with the subjective intent to cause harm to the Governments and/or the subjective knowledge that harm to the Governments was certain to occur; and the conduct was wrongful, done intentionally, injurious to the Governments, and taken without just cause and excuse.  Burch admits that this conduct violates 31 U.S.C. § 3729(a)(1)(A), (B) & (C), the Georgia State False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, et seq., the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5 et seq., and South Carolina Code Section 43-7-60.  Burch admits that he and his co-conspirators entered into conspiracies to present or cause to be presented false or fraudulent claims for payment or approval to Medicare and Medicaid—and to make, use, and cause to be made or used false records or statements in support of those claims—and performed acts in furtherance of these conspiracies.

3.     Burch shall pay to the United States a total of thirty-five thousand dollars ($35,000), all of which constitutes restitution, as specified in this Paragraph (collectively, the Settlement Amount), under the terms and conditions specified herein, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the District of South Carolina.

a.    Burch shall pay to the United States the sum of Five Thousand Dollars ($5,000.00) (Initial Payment) no later than June 30, 2025.

b.    Burch shall pay to the United States the sum of Thirty-thousand dollars ($30,000), plus simple interest at four and one quarter percent (4.250%) per annum, calculated daily, from June 30, 2025, and continuing until and including the day of payment, pursuant to the payment schedule attached as Exhibit A (each a "Payment Over Time" and collectively the "Payments Over Time"). The Payments Over Time may be prepaid, in whole or in part, without penalty or premium.

c.    After receipt of the Initial Payment, and for each of the Payments Over Time (together, Payments), the United States will hold for and then disburse to the States of Colorado, Georgia, and South Carolina their proportional share of the Payments, including the States' proportional share of interest. Each States' proportional share is as follows:

i.    Forty-seven and nine-tenths percent (47.9%) of each Payment is restitution for false claims to the Georgia Medicaid program. Of that portion, the United States retains fifty-seven and six-tenths percent (57.6%) and shall distribute forty-two and four-tenths percent (42.4%) to the State of Georgia.

ii.    Fifty-one and three-tenths percent (51.3%) of each Payment is restitution for false claims to the Colorado Medicaid Program. Of that portion, the United States retains forty percent (40%) and shall distribute sixty percent (60%) to the State of Colorado.

iii.    Eight-tenths percent (.8%) of each Payment is restitution for false claims to the South Carolina Medicaid Program. Of that portion, the

8



United States retains seventy-one and two-tenths percent (71.2%) and shall distribute twenty-eight and eight-tenths percent (28.8%) to the State of South Carolina.

d.    Annual Report: A calendar year is the Annual Contingency Period.  The Total Contingency Period is year 2025 through year 2030. No later than April 30 of the calendar year following the Annual Contingency Period, Burch shall e-mail the undersigned counsel for the United States (or anyone the United States identifies to receive service) a written summary (Annual Report), including a signed certification confirming the accuracy of its contents subject to 18 U.S.C. 1001, in the form of Exhibit B, attached hereto detailing (1)  gross wages earned during the Annual Contingency Period, (2) distributions received during the Annual Contingency Period; (3) whether Burch has had a Windfall Event during the Annual Contingency Period, as defined in Paragraph 3(g), and (4) a calculation of the amount due to the United States under this Paragraph.  Along with the Annual Report, Burch shall attach a filed and signed copy of IRS Form 1040 with all supporting schedules, and all W-2s, and Schedule K-1s for the Annual Contingency Period reported.

e.    Wage Contingency: If for any calendar year during the Total Contingency Period, Burch collects over Eighty Thousand Dollars ($80,000) in gross wages, Burch shall pay to the United States (to be distributed to the States pursuant to Paragraph 3(c)(i)–(iii)) twenty-five percent (25%) of the gross amount collected over Eighty Thousand dollars ($80,000), no later than at the time of filing the Annual Report, provided under Paragraph 3(d). For these purposes gross wages is defined as the amount reported on IRS Form 1040.

f.    Distribution Contingency: If for any calendar year during the Total Contingency Period, Burch collects over Fifty-Four Thousand Dollars ($54,000) in distributions,

Burch shall pay to the United States (to be distributed to the States pursuant to Paragraph 3(c)(i)–(iii)) twenty-five percent (25%) of the gross amount over and above Fifty-Four Thousand Dollars ($54,000). Distributions are payments to or for the benefit of owners that represent a transfer of assets, including, but not limited to, cash, stock dividends, and property, regardless of whether reported on Schedule K-1s.

        g.   <u>Windfall Contingency</u> – In the event that, during the Total Contingency Period, Burch receives any income that is not reported on IRS Form 1040 or is not reported as part of the distribution contingency under Paragraph 3(f), including but not limited to gifts, sales proceeds, insurance payments in excess of costs to repair or replace loss, penalties, restitution, federal tax refunds and non-cash business deductions, which exceed the aggregate value of One Thousand Dollars ($1,000) in a calendar year (Windfall Event), Edward Burch shall pay to the United States thirty percent (30%) of the value of the Windfall Event.

        h.   All Payments made by Burch under this Paragraph, including any contingency payments, are restitution to the United States and the States.

        4.   Burch shall execute and agree to the entry of a consent judgment in favor of the United States and the States and against Burch in the amount of Eight Million Dollars ($8,000,000.00), a copy of which is attached hereto as Exhibit C (Burch Consent Judgment). The United States and the States may use the Burch Consent Judgment to obtain a security interest in any asset or property of Burch but shall not engage in other collection activity with respect to the Burch Consent Judgment so long as Burch fully complies with the terms of this Stipulation. Should Burch comply fully with the payment terms in Paragraph 3 above and the other terms of this Stipulation, the Burch Consent Judgment shall be deemed to be satisfied in full.

5.    Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and subject to Paragraph 7 (concerning disclosure of assets), Paragraph 15 (concerning default), and Paragraph 16 (concerning bankruptcy) below, and conditioned on Burch's full compliance with the terms of this Stipulation, including full and timely payments to the United States of the Settlement Amount pursuant to Paragraph 3 above, the United States and the States release Burch from any civil or administrative monetary claim the United States and the States have for the Covered Conduct under the FCA, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Georgia State False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, et seq., the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-303.5 et seq., and South Carolina Code Section 43-7-60, or the common law theories of payment by mistake, unjust enrichment, and fraud.

6.    Notwithstanding the releases given in Paragraph 5 of this Stipulation, or any other term of this Stipulation, the following claims and rights of the United States and States are specifically reserved and are not released:

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code) and the state revenue codes of Colorado, Georgia, and South Carolina;

b.    Any criminal liability;

c.    Except as explicitly stated in this Stipulation, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal healthcare programs;

d.    Any liability to the United States (or its agencies) and the States of Colorado, Georgia, and South Carolina (or their agencies) for any conduct other than the Covered Conduct;

11

    e.      Any liability based upon obligations created by this Stipulation;

    f.       Any liability of individuals who are not party to this Stipulation; and

    g.      any civil or administrative liability that any person or entity has or may have to the States of Colorado, Georgia and South Carolina, or to individual consumers or state program payors under any statute, regulation, or rule not expressly covered by the release in Paragraph 5 above, including, but not limited to, any and all of the following claims: (i) claims involving unlawful or illegal conduct based on State or federal antitrust violations; and (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws.

7.      Burch has provided sworn financial disclosures and supporting documents (collectively, Financial Disclosures) to the United States, and the United States and the States have relied on the accuracy and completeness of those Financial Disclosures in reaching this Stipulation. Burch warrants that such Financial Disclosures are complete, accurate, and current as of the Effective Date of this Stipulation. If the Governments learn of asset(s) in which Burch had an interest of any kind as of the Effective Date of this Stipulation (including, but not limited to, promises by insurers or other third parties to satisfy Burch's obligations under this Stipulation) that were not disclosed in such Financial Disclosures, or if the Governments learn of any false statement or misrepresentation by Burch on, or in connection with, such Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in such Financial Disclosures by Ten Thousand Dollars ($10,000.00) or more, the Governments may at their option: (a) rescind this Stipulation and reinstate their suit or file suit based on the Covered Conduct or (b) collect the full Settlement

Amount in accordance with the Stipulation plus one hundred percent (100%) of the net value of Burch's previously undisclosed assets. Burch agrees not to contest any collection action undertaken by the Governments pursuant to this provision, and agree that they will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' and the States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States and the States, pursuant to this Paragraph rescind their Stipulation, Burch waives and agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States or the States within 120 calendar days of written notification to Burch that this Stipulation has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on June 30, 2021.

8.      Burch waives and shall not assert any defenses Burch may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

9.      Burch fully and finally releases the United States and the States, their agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Burch has asserted, could have asserted, or may assert in the future against the United States and the States or, their agencies, officers, agents, employees, and servants, related to the Covered Conduct or the Governments' investigation or prosecution thereof.



10.    The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE, or any state payer, related to the Covered Conduct; and Burch agrees not to resubmit to any Medicare contractor, TRICARE, or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

11.    Burch agrees to the following:

a.    <u>Unallowable Costs Defined</u>:    All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Burch or their present or former agents in connection with:

(1)    the matters covered by this Stipulation and any related plea agreement;

(2)    the United States' or the States' audit(s) and any civil or criminal investigation(s) of the matters covered by this Stipulation:

(3)    Burch's investigation, defense, and corrective actions undertaken in response to the United States' or States' audit(s) and any civil or criminal investigation(s) in connection with the matters covered by this Stipulation (including attorneys' fees):

(4)    the negotiation and performance of this Stipulation and any plea agreement; and

(5)    the payment Burch makes to the United States and the States pursuant to this Stipulation are unallowable costs for government contracting purposes

14



and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.    Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for by Burch , and Burch  shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Burch  or any of his companies, subsidiaries, or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.    Treatment of Unallowable Costs Previously Submitted for Payment: Burch further agrees that within 90 days of the Effective Date of this Stipulation Burch shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Burch or any of his companies, subsidiaries, or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Burch agrees that the United States, at a minimum, shall be entitled to recoup from Burch any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

15



Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Burch or any of his companies, subsidiaries, or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Burch or any of their companies, subsidiaries, or affiliates' cost reports, cost statements, or information reports.

d.     Nothing in this Stipulation shall constitute a waiver of the rights of the United States or the States to audit, examine, or re-examine Burch's ~~the~~ books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12.     Burch agrees to cooperate fully, truthfully, completely, and forthrightly with the United States' and States' investigation(s) of, and/or legal proceeding(s) against, individuals and entities not released in this Stipulation. Upon request by the Governments and reasonable notice, Burch shall be available for interviews by the Governments and shall fully, truthfully, completely, and forthrightly answer questions. Upon request by the Governments and reasonable notice, Burch shall testify under oath fully, truthfully, completely, and forthrightly at any and all trials of cases or other court proceedings, including depositions, at which ~~their~~ his testimony may be deemed relevant by the Governments. Burch agrees to encourage, and not impair, the cooperation of Freedom Medical's directors, officers, and employees, and to use his best efforts to make available, and encourage, the cooperation of Freedom Medical's former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Burch further agrees to furnish to the Governments, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and

16



records in his possession, custody, or control relating to Premier Medical, current and former Premier Medical employees, or any owner, executive, employee, or agent of the foregoing entities.

13.     This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 14 (waiver for beneficiaries), below.

14.     Burch agrees that he waives and shall not seek payment for any of the healthcare billings covered by this Stipulation from any healthcare beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

15.     The Settlement Amount represents the amount the United States and the States are willing to accept in compromise of their civil claims arising from the Covered Conduct due solely to Burch's financial condition as reflected in the Financial Disclosures referenced in Paragraph 7 above.

a.     Burch shall be in default of this Stipulation if he fails to make the required payments set forth in Paragraph 3 above on or before the due date for such payments, or if he fails to comply materially with any other term of this Stipulation (Default). The United States will provide a written Notice of Default, and Burch shall have an opportunity to cure such Default within ten (10) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under this Stipulation up to the date of payment. Notice of Default will be delivered to Burch, or to such other representative as Burch shall designate in advance in writing. If Burch fails to cure the Default within ten (10) calendar days of receiving the Notice of Default and in the absence of an

17



agreement with the United States and the States to a modified payment schedule (Uncured Default), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of twelve percent (12%) per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b.    In the event of Uncured Default, Burch agrees that the United States or the States, at their discretion, may (i) retain any payments previously made, rescind this Stipulation and pursue the Complaint or bring any civil and/or administrative claim, action, or proceeding against Burch for the claims that would otherwise be covered by the releases provided in Paragraph 5 above with any recovery reduced by the amount of any payments previously made by Burch to the United States under this Stipulation; (ii) take any action to enforce this Stipulation in a new action or by reinstating the Complaint; (iii) offset the remaining unpaid balance from any amounts due and owing to Burch and/or affiliated companies by any department, agency, or agent of the United States or States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. Burch shall not contest any offset imposed or any collection undertaken by the United States or States pursuant to this Paragraph, either administratively or in any Federal or State court. The United States and the States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States or the States pursue a collection action, Burch agree immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' or States' reasonable attorneys' fees and expenses incurred in such an action. In the event that

the Governments opt to rescind this Stipulation pursuant to this Paragraph, Burch waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States or States against Burch within one hundred twenty (120) days of written notification that this Stipulation has been rescinded, and (ii) related to the Covered Conduct, except to the extent these defenses were available on July 30, 2021.

c.       In the event of Uncured Default, OIG-HHS may exclude Burch from participating in all Federal healthcare programs until Burch pays the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusion to Burch. Burch waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7) and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Burch wishes to apply for reinstatement, they must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Burch will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Stipulation or otherwise available.

16.     In exchange for valuable consideration provided in this Stipulation, Burch acknowledges the following:

a.       Burch has reviewed his financial situations and warrant that he is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

b.     In evaluating whether to execute this Stipulation, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Burch, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.     The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.     The Parties do not intend to hinder, delay, or defraud any entity to which Burch was or became indebted to on or after the date of any transfer contemplated in this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

e.     If Burch's obligations under this Stipulation are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Burch, or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Burch's debts, or to adjudicate Burch as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Burch or for all or any substantial part of Burch's assets:

(i) the United States and the States may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Burch for the claims that would otherwise be covered by the releases provided in Paragraph 5 above; and

(ii) the United States and the States have an undisputed, non-contingent, and liquidated allowed claim against Burch in the amount of $8,000,000 less any payments received pursuant to this Stipulation, provided, however, that such payments are not otherwise avoided

20

and recovered from the United States or States by Burch, a receiver, trustee, custodian, or other similar official for Burch.

     f.     Burch agrees that any civil and/or administrative claim, action, or proceeding brought by the United States or States under Paragraph 219(e) is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' and States' police and regulatory power. Burch shall not argue or otherwise contend that the United States' or States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consent to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Burch waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States or States within 120 days of written notification to Burch that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on July 30, 2021.

     17.     Except as provided in Paragraphs 7 and 16 above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

     18.     Each Party and signatory to this Stipulation represents that it freely and voluntarily enters into this Stipulation without any degree of duress or compulsion.

     19.     This Stipulation is governed by the laws of the United States. The exclusive venue for any dispute relating to this Stipulation is the United States District Court for the District of South Carolina. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

21

20.     This Stipulation constitutes the complete agreement between the Parties. This Stipulation may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Stipulation shall not constitute a waiver of rights under this Stipulation.

21.     The undersigned counsel represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

22.     This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.

23.     This Stipulation is binding on Burch's successors, transferees, heirs, and assigns.

24.     All Parties consent to the United States' or the States' disclosure of this Stipulation, and information about this Stipulation, to the public.

25.     This Stipulation is effective on the date upon which the Stipulation is approved by the Court (Effective Date). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

### THE UNITED STATES OF AMERICA

DATED: 05/22/2025     BY: _____

BETH C. WARREN
Assistant United States Attorney
Office of the United States Attorney
District of South Carolina

DATED: 5/16/25     BY: SUSAN GILLIN
Digitally signed by SUSAN GILLIN
Date: 2025.05.16 14:50:18 -04'00'

SUSAN E. GILLIN
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## THE STATE OF SOUTH CAROLINA

DATED: 5/15/25    BY: _____

SARAH JEAN BAILEY
Assistant General Counsel
SOUTH CAROLINA DEPT. OF HEALTH AND
HUMAN SERVICES

DATED: 5/15/2025    BY: _____

STEPHANIE OPET
Assistant Deputy Attorney General
Medicaid Fraud Control Unit
South Carolina Attorney General's Office

## THE STATE OF GEORGIA

DATED: _____    BY: _____

RUSSELL CARLSON
Commissioner
Georgia Department of Community Health

DATED: _____    BY: _____

JIM MOONEY
Deputy Attorney General
Office of the Attorney General for the State of Georgia
Medicaid Fraud Division

## THE STATE OF COLORADO

DATED: _____    BY: _____

KIM BIMESTEFER
Executive Director
Colorado Department of Health Care Policy and Financing

23

## THE STATE OF SOUTH CAROLINA

DATED: _____    BY: _____
                         SARAH HEARN-BAILEY
                         Assistant General Counsel
                         SOUTH CAROLINA DEPT. OF HEALTH AND
                         HUMAN SERVICES

DATED: _____    BY: _____
                         STEPHANIE OPET
                         Assistant Deputy Attorney General
                         Medicaid Fraud Control Unit
                         South Carolina Attorney General's Office

## THE STATE OF GEORGIA

DATED: 5/21/2025    BY: _____
                         RUSSEL CARLSON
                         Commissioner
                         Georgia Department of Community Health

DATED: 5|21|2025    BY: _____
                         JIM MOONEY
                         Deputy Attorney General
                         Office of the Attorney General for the State of Georgia
                         Medicaid Fraud Division

## THE STATE OF COLORADO

DATED: _____    BY: _____
                         KIM BIMESTEFER
                         Executive Director
                         Colorado Department of Health Care Policy and Financing

23

## THE STATE OF SOUTH CAROLINA

DATED: _____     BY: _____
                          SARAH HEARN-BAILEY
                          Assistant General Counsel
                          SOUTH CAROLINA DEPT. OF HEALTH AND
                          HUMAN SERVICES

DATED: _____     BY: _____
                          STEPHANIE OPET
                          Assistant Deputy Attorney General
                          Medicaid Fraud Control Unit
                          South Carolina Attorney General's Office

## THE STATE OF GEORGIA

DATED: _____     BY: _____
                          RUSSELL CARLSON
                          Commissioner
                          Georgia Department of Community Health

DATED: _____     BY: _____
                          JIM MOONEY
                          Deputy Attorney General
                          Office of the Attorney General for the State of Georgia
                          Medicaid Fraud Division

## THE STATE OF COLORADO

DATED: 05/21/2025     BY: _____
                          KIM BIMESTEFER
                          Executive Director
                          Colorado Department of Health Care Policy and Financing

25

DATED: 5/15/2025    BY: _____

REBECCA WEBER
First Assistant Attorney General/Director
Medicaid Fraud, Abuse & Neglect Unit
Colorado Attorney General's Office


**EDWARD BURCH - DEFENDANT**

DATED: 5/13/25    BY: _____

Edward Burch


**IT IS SO ORDERED**, this 30th day of June, 2025.

_____

Timothy M. Cain
United States District Judge

## EXHIBIT A

U.S. v. Edward Burch
Settlement Agreement Payment Schedule

| No. | Date | Payment | Interest 4.250% | Principal | Balance |
|---|---|---|---|---|---|
| | | | | | $   35,000.00 |
| Upfront | 6/30/2025 | $   5,000.00 | $    - | $   5,000.00 | 30,000.00 |
| 1 | 9/30/2025 | 1,500.00 | 321.37 | 1,500.00 | 28,500.00 |
| 2 | 12/30/2025 | 1,821.37 | 321.37 | 1,500.00 | 27,000.00 |
| 3 | 3/30/2026 | 1,782.95 | 282.95 | 1,500.00 | 25,500.00 |
| 4 | 6/30/2026 | 1,773.16 | 273.16 | 1,500.00 | 24,000.00 |
| 5 | 9/30/2026 | 1,757.10 | 257.10 | 1,500.00 | 22,500.00 |
| 6 | 12/30/2026 | 1,738.41 | 238.41 | 1,500.00 | 21,000.00 |
| 7 | 3/30/2027 | 1,720.07 | 220.07 | 1,500.00 | 19,500.00 |
| 8 | 6/30/2027 | 1,708.89 | 208.89 | 1,500.00 | 18,000.00 |
| 9 | 9/30/2027 | 1,692.82 | 192.82 | 1,500.00 | 16,500.00 |
| 10 | 12/30/2027 | 1,674.83 | 174.83 | 1,500.00 | 15,000.00 |
| 11 | 3/30/2028 | 1,658.94 | 158.94 | 1,500.00 | 13,500.00 |
| 12 | 6/30/2028 | 1,644.62 | 144.62 | 1,500.00 | 12,000.00 |
| 13 | 9/30/2028 | 1,628.55 | 128.55 | 1,500.00 | 10,500.00 |
| 14 | 12/30/2028 | 1,611.26 | 111.26 | 1,500.00 | 9,000.00 |
| 15 | 3/30/2029 | 1,594.32 | 94.32 | 1,500.00 | 7,500.00 |
| 16 | 6/30/2029 | 1,580.34 | 80.34 | 1,500.00 | 6,000.00 |
| 17 | 9/30/2029 | 1,564.27 | 64.27 | 1,500.00 | 4,500.00 |
| 18 | 12/30/2029 | 1,547.68 | 47.68 | 1,500.00 | 3,000.00 |
| 19 | 3/30/2030 | 1,531.44 | 31.44 | 1,500.00 | 1,500.00 |
| 20 | 6/30/2030 | 1,516.07 | 16.07 | 1,500.00 | - |
| | Total | 38,047.08 | 3,368.45 | 35,000.00 | |



<u>EXHIBIT B</u>

## ANNUAL REPORT – DUE BY APRIL 30 BEGINNING 2026 and ending 2031

<u>Report-Paragraph 3(d)(l)</u>

I, Edward Burch, report gross wages of $ _____ during Annual Contingency Period ____. I have attached a signed copy of IRS Form 1040 and any W-2s for the Annual Contingency Period being reported.

Gross wages are the amount of gross wages reported on the IRS Form 1040.

<u>Report-Paragraph 3(d)(2)</u>

I, Edward Burch, report that I received $ _____ in distributions during Annual Contingency Period _____. I have attached all Schedule K-1s for the Annual Contingency Period being reported.

Distributions are payments to or for the benefit of owners that represent a transfer of assets, including, but not limited to, cash, stock dividends, and property, regardless of whether reported on Schedule K-1s.

<u>Report Paragraph 3(d)(3)</u>

I, Edward Burch, report that I ☐ Did ☐ Did Not, have a Windfall Event during the Annual Contingency Period being reported.

A Windfall Event is any income that is not reported on IRS Form 1040 or is not accounted for in the distribution contingency under Paragraph 3f of the Stipulation and Order of Settlement, including but not limited to gifts, sales proceeds, insurance payments in excess of costs to repair or replace loss, penalties, restitution, federal tax refunds and non-cash business deductions, which exceed the aggregate value of One Thousand Dollars ($1,000) in a calendar year.

<u>Report – Paragraph 3(e)-(g)</u>

| Contingency Category | Total Amount | Amount Over Threshold | Contingency % | Amount Owed |
|---|---|---|---|---|
| Gross Wages > $80,000 | | | 25% | |
| Distributions > $54,000 | | | 25% | |
| Windfall as defined | | | 30% | |

**I hereby certify, under the penalty of perjury, and subject to 18 U.S.C. § 1001, that the foregoing Report is truthful, accurate, and complete.**

**Signature** _____

**Name (Print)** _____

**Date** _____

Page **1** of 1

**EXHIBIT C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, STATE OF GEORGIA, STATE OF COLORADO, AND STATE OF SOUTH CAROLINA, | C/A No. 6:18-cv-00165-TMC |
| Plaintiffs, | |
| *ex rel.* SUSAN MATHEWSON, | |
| Plaintiff-Relator, | |
| v. | |
| PREMIER MEDICAL, INC., KEVIN S. MURDOCK, FREEDOM MEDICAL LABS, LLC, ROBERT ALAN RICHARDSON, AND EDWARD BURCH, | |
| Defendants. | |

**CONSENT JUDGMENT**

Upon the consent of the plaintiffs United States, the states of Colorado, Georgia, and South Carolina, and defendant Edward Burch, it is hereby:

ORDERED, ADJUDGED, and DECREED that plaintiff United States of America, the states of Colorado, Georgia, and South Carolina are awarded judgment in the amount of $8,000,000 against defendant Edward Burch.

BRYAN P. STIRLING

United States Attorney
District of South Carolina

By: _____
BETH C. WARREN (#11360)
NANCY COTE (#12530)

Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Telephone (803) 929-3037
E-mail: Beth.C.Warren@usdoj.gov

CHRISTOPHER M. CARR
Attorney General
State of Georgia

Sara Vann
Senior Assistant Attorney General
Georgia Bar No. 141787
600 West Peachtree St.
20th Floor
Atlanta, Georgia 30308
Telephone: (404) 458-3755
E-mail: svann@law.ga.gov
Admitted *Pro Hac Vice*

PHILIP J. WEISER
Attorney General
State of Colorado

Lauren Nicole Jones
Assistant Attorney General
Colorado Bar No. 58444
Office of the Attorney General, MFCU
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone.: (720) 508-6741
E-mail: lauren.jones@coag.gov
Admitted *Pro Hac Vice*

Hannah Logue Perng
Assistant Attorney General
Colorado Bar No. 61004
Office of the Attorney General, MFCU
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone.: (720) 508-6195
E-mail: hannah.perng@coag.gov

ALAN WILSON
Attorney General
State of South Carolina

Stephanie G. Opet (#13502)
Timothy Brandon Steen (#13634)
Assistant Deputy Attorneys General
Medicaid Fraud Control Unit
South Carolina Office of the Attorney
General
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-3405
E-mail: SCjeddard@scag.gov

By:     x _Edward Burch_

Edward Burch

**IT IS SO ORDERED**, this 30th day of JUNE , 2025.

Timothy M. Cain
United States District Judge