**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| United States of America, State of Georgia, State of Colorado, and State of South Carolina e*x rel*. Susan Mathewson, as Representative of Estate of Karen Mathewson <br><br> Plaintiff-Relator <br><br> v. <br><br> Premier Medical, Inc. Kevin S. Murdock, Freedom Medical Labs, LLC, Robert Alan Richardson, And Edward Burch, <br><br> Defendants. | C.A. No. 6:18-cv-00165-TMC |

**MOTION FOR AWARD OF REASONABLE EXPENSES, ATTORNEYS' FEES AND COSTS UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §3730(d)(1)**

Susan Mathewson, as representative of the Estate of Karen Mathewson, moves for an award of $77,020 for attorneys' fees and $1,849 in costs, and states as follows:

**I.    SUMMARY**

An agreed Consent Judgment of $27,544,460 was entered by the Court on July 14, 2025 (Docket No. 450.) It recited (among other things) that Relator claims entitlement under 31 U.S.C. § 3730(d) to Relator's reasonable expenses, attorneys' fees and costs, which shall be separately negotiated between Murdock and Relator. Despite agreeing to this language, Murdock has not responded to Relator's multiple attempts to negotiate, requiring Relator to file this motion. Murdock has also not responded to Relator's question about whether Murdock is opposed to this motion. Relator's understanding is that Murdock does not plan to pay the Consent Judgment or pay any fees and costs awarded by this Court, which may explain why he is not responding.

Awarding Relator's request for $78,869 in fees and costs would increase Murdock's

liability by a small fraction of 1% (0.286%) from $27,544,460 to $27,623,329.

Relator files this motion seeking fees within 14 days of the judgment, pursuant to Federal Rule of Civil Procedure 54(d).

## II.     BACKGROUND

In October 2017, relator Karen Mathewson contacted attorney Cory Fein about her employer, Premier Medical, Inc. ("Premier Medical") committing fraud against the Government. Karen and her counsel worked to draft a complaint and supporting disclosure statement. On January 18, 2018, Karen and her counsel initiated this litigation by filing suit pursuant to the False Claims Act's qui tam provisions, 31 U.S.C. § 3730(b), against Premier Medical. (Relator later added Kevin Murdock and additional individuals as defendants when it became clear that Murdock was going to discontinue Premier Medical.)

In addition to providing a detailed disclosure to the Government, Karen and her counsel met with the US Attorney's office in February 2018 to provide additional information. Throughout 2018, Karen and her counsel continued to work on the case, drafting and filing an amended complaint, providing additional information to the Government, and assisting the Government in its investigation.

When Karen died in 2019, her estate (represented by Karen's father) substituted in as the relator. In 2021 the United States, Georgia, Colorado and South Carolina intervened and filed a Joint Complaint in Intervention. Karen's father died in 2025 and Karen's sister (Susan Mathewson) substituted in as representative of Karen's estate.

After intervention, the Government entities litigated this case to its conclusion, resulting in the Consent Judgment and termination of this case 14 days ago. Relator now moves for an award of fees, costs and expenses.

### A.     Performance of Litigation Tasks

Relator's lead counsel, Cory Fein, is an attorney with more than 30 years' experience who has focused his practice on representing whistleblowers like Karen in False Claims Act and similar litigation for the past several years. Relator's counsel (including Cory Fein and local counsel Bert Louthian) have worked on this case for about 94 months, from intake in October 2017 to the present. Relator's counsel seek recovery for 101.2 hours of work, which amounts to barely more than one hour per month. Fein Decl., Exh. 1, at ¶¶3-14. The $72,040 in fees sought by Relator's counsel amounts to about ¼ of 1% of the judgment of more than 27.5 million.

Most of the time expended was in the early years of the case. In the recent years, Relator's counsel mostly just conferred with the Government attorneys, monitored the progress of the case. Relator's counsel kept contemporaneously documented time records (which will be produced in camera to the Court on request, in order to protect privilege.) Much of Relator's counsel's time was not recorded and Relator only seeks fees for counsel's recorded time. Fein Decl., Exh. 1, at ¶¶3-22.

After their intake investigation, research and interviews with Relator, Fein (in consultation with Louthian) performed the work needed to draft and file the Complaint. Under Rules 8 and 9(b) of the Federal Rules of Civil Procedure, the complaint had to sufficiently state claims and be particular enough to plead fraud. *Id.* Under 31 USC §3730(b)(2), counsel were also required to draft and serve on the government a "written disclosure of substantially all material evidence and information" Relator possessed. *Id.* Relator made a pre-filing disclosure on the government in January 2018, the complaint was filed under seal in February 2018, and the Complaint along with the mandatory disclosure statement and exhibits were served on the United States. *Id.*

As contemplated by the False Claims Act, Relator and Relator's counsel met with Government lawyers in person at the US Attorney's Office in Greenville on February 18, 2018.

*Id.* Relator and her counsel continued working with the Government attorneys including providing contact information for key witnesses, and further explaining details of the false billing schemes. *Id.*

Relator's counsel continued conferring with the Government lawyers, primarily Beth Warren, and working with Relator (and the representatives of Relator's estate) throughout the many twists and turns this litigation has taken over the past 7+ years. *Id.*

## III.     ARGUMENT

### A.     Congress Enacted the Fee-Shifting Provision of the False Claims Act to Ensure Qualified and Capable Attorneys Represent Relators and Perform the Vital Role Envisioned for Them Under the Statute.

"The False Claims Act is the primary law on which the federal government relies to recover losses caused by fraud." *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). In 1986, Congress queried "why fraud in Government programs is so pervasive yet seldom detected and rarely prosecuted." S. Rep. No. 99-345, at 4, 1986 U.S.C.C.A.N. 5266. It found "serious roadblocks to obtaining information as well as weaknesses in both investigative and litigative tools." *Id*. In Congress's view, "the most serious problem plaguing effective enforcement is a lack of resources on the part of Federal enforcement agencies." Id., at 7. "Allegations that perhaps could develop into very significant cases are often left unaddressed at the outset due to a judgment that devoting scarce resources to a questionable case may not be efficient." *Id*. Then, "large, profitable corporations" became "the subject of a fraud investigation," and were able "to devote many times the manpower and resources available to the Government," resulting in a "resource mismatch." *Id*. at 8.

Congress amended the Act to make it "the Government's primary litigative tool for combating fraud" "in modern times." S. Rep. No. 99-345, at 2; *see also* H. Rep. No. 99-660, at 18 (1986) (Act "used as the primary vehicle by the Government for recouping losses suffered through

fraud"); S. Rep. No. 111-10, at 10, 2009 U.S.C.C.A.N. 430, 437 (reinvigorated Act declared "[o]ne of the most successful tools for combating waste and abuse in Government spending"). Primary among the amendments were reinforcements of the qui tam provisions. "[O]nly a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds." S. Rep. No. 99-345, at 2. For the Act to function, however, relators must secure experienced representation. Congress knew this when it amended the Act in 1986, concluding the "unavailability of attorneys fees" in the prior versions of the law "inhibits and precludes many private individuals, as well as their attorneys, from bringing fraud suits." *Id*., at 29.

The fee provision in §3730(d) effectuates the Act's purposes by attracting attorneys capable of navigating claims through the statutory labyrinth Congress has enacted. The typical tort-based contingency-fee model for securing representation is insufficient to attract qualified attorneys to play their part. "Without a doubt, relators and their attorneys play a vital role in rooting out health care fraud and obtaining recovery of the public monies that were intended to be spent for providing health care to veterans and poor, elderly, and disabled citizens." *United States ex rel. Doghramji v. Cmty. Health Sys*., 666 Fed. Appx. 410, 419 (6th Cir. 2016) (concurring opinion). Evidence of wrongdoing provided by relators "is just the beginning." *Id*. at 420. "Attorneys then must undertake the substantial investigative work and expense of putting together a case for their relators then present it to government officials to determine if the government is willing to proceed with the litigation." *Id*.

Relator's counsel devoted years to pursuing this litigation and assisting the Government. Since the purpose of attorneys' fees provision is to attract specialized attorneys to represent relators in the exposure and pursuit of government fraud, it is imperative that fee awards reflect what the legal market pays for those lawyers' time and commitment. If the fee is set below the amount the

5

legal marketplace determines to be reasonable, qualified attorneys will be reluctant to take on potentially meritorious qui tam cases, undermining the important purposes of the Act. Unless fees awarded or negotiated are fully reasonable – including compensation for the contingent nature of the representation – claims of relators will fail for lack of representation.

**B.    Statutory Attorneys' Fees Must Be Determined Considering the Facts of the Specialized Marketplace for Legal Services**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *United States ex rel. Hartnett v. Physicians Choice Lab. Servs*., No. 3:17-CV-37, 2021 U.S. Dist. LEXIS 134513, at \*26 (W.D.N.C. July 20, 2021) citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See also Blum v. Stenson*, 465 U.S. 886 (1984); *United States ex rel. Averback v. Pastor Med. Assocs. P.C*., 224 F. Supp. 2d 342, 350 (D. Mass. 2002). *See García-Rubiera v. Fortuño*, 727 F.3d 102, 116 (1st Cir. 2013) ("A district court can hardly go wrong in selecting the so-called lodestar method when called upon to determine how much of an attorneys' fee a losing defendant need pay a prevailing plaintiff"); *Coutin v. Young & Rubicam P.R. Inc*., 124 F.3d 331, 337 (1st Cir. 1997) ("The lodestar method is the strongly preferred method by which district courts should determine what fees to award prevailing parties").

Under the lodestar method, courts follow a two-step inquiry. First, they determine the "lodestar", defined as the number of hours reasonably expended in the litigation multiplied by the reasonable hourly rates of the various timekeepers. This lodestar calculation is presumed to represent a "reasonable fee." Under certain circumstances, the "lodestar" may be adjusted to account for elements not addressed in the calculation. This method is used to provide "an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S.

6

at 433. It "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case;" and it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-552 (2010).

### 1.     Number of Hours

The starting point for determining reasonable fees is the reasonable hours expended in the litigation. *Blum*, 465 U.S. at 888. Courts ordinarily should defer to the fee claimant's judgment as to the reasonableness of, and necessity for, the work. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case"); *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1306 (11th Cir. 1988) ("The measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done").

The time claimed in this case (barely more than one hour per month) was reasonably and necessarily expended. Fein Decl. at ¶¶3-22. Relator has disclosed his fee request to Defendant Murdock who has raised no dispute. *Id.* Counsel reserve the right to amend or supplement this petition in light of any dispute that Murdock may raise.

### 2.     Hourly Rate, Determined by the Appropriate Market.

Under the lodestar method, the Court "looks to 'the prevailing market rates in the relevant community." *Perdue*, 130 S. Ct. at 1672 (quoting *Blum*, 465 U.S. at 895). Counsel must establish (1) fee claimants' skills, knowledge, experience and reputation forming the basis for claimed hourly rates; and (2) prevailing rates in the community for similarly qualified attorneys. *Averback*, 224 F. Supp. 2d at 353. *See Blum*, 465 U.S. at 895-96 n. 11; *Calhoun v. Acme Cleveland Corp.*,

801 F.2d 558, 560 (1st Cir. 1986) (applicant bears burden of providing "information about fees customarily charged in the locality for similar legal services and information about the experience and billing practices of the attorneys in question"). Counsel are entitled to be compensated at market-based hourly rates, taking into consideration their specialized skills and experience, the contingent nature of the work, customary billing rates and the prevailing rates charged by attorneys of similar skills and experiences for comparable legal services.

Counsel seek the following rates:

| Timekeeper | Yr. Graduate | Current Billing Rate |
|---|---|---|
| Cory Fein | 1991 | $800 |
| Bert Louthian | 1983 | $500 |

To the extent Murdock does not contest Relator's motion, the Court may clarify in its Order that its ruling does not establish a precedent for hourly rates in future cases where the rate is contested with credible evidence.

Several factors contribute to the requested rates. First, under Supreme Court authorities, to compensate for delay in payment, statutory attorney's fees should be calculated using hourly rates current to the year of recovery. *Perdue*, 559 U.S. at 555; *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). *See also Shealy v. Hughes*, No. 2:10-cv-714, 2011 U.S. Dist. LEXIS 173615, at *12 (D.S.C. Oct. 24, 2011) ("[I]t is appropriate to use current billing rates, rather than historical rates, in order to compensate for the delay in payment for the attorney's services.")

Second, counsel's reasonable hourly rates must reflect the market treatment for experienced attorneys with specialized skills necessary to litigate this qui tam case. *See Blum*, 465 U.S. at 890 (special qualifications justifies higher rates based upon market treatment). Such specialized skills and experience are essential to qui tam cases. The False Claims Act is a unique

8

statute, with complex procedures and case law. While many complex-litigation lawyers are capable of professionally handling a qui tam case, the False Claims Act and its qui tam provisions pose many procedural and legal hurdles, such that experience in qui tam litigation is a unique qualification which differentiates its practitioners from general complex-litigation attorneys. *See Weiss ex rel. United States v. United Seating & Mobility LLC*, No. CV-20-01573-PHX-SPL, 2024 U.S. Dist. LEXIS 195191, at *24 (D. Ariz. 2024) (finding $950/hour is a reasonable billing rate for law firm partners in qui tam cases); *United States ex rel. Simpson v. Bayer Corp.*, No. 0:08-cv-5758, 2024 U.S. Dist. LEXIS 61508, at *18 (D. Minn. Jan. 25, 2024) (approving rate of $860 per hour for qui tam lawyer with 20+ years of experience); *United States ex rel. Bisbano v. Claris Vision, LLC*, No. 18-00176-MSM, 2024 U.S. Dist. LEXIS 99775, at *7 (D.R.I. June 5, 2024) (recommending proposed rates of $950.00, and $750 for qui tam counsel); *United States v. AthenaHealth, Inc.*, CA No. 17-12125-NM, 2022 U.S. Dist. LEXIS 38378, 2022 WL 658654, *7-8 (D. Mass. Mar. 3, 2022) (approving hourly rates in a qui tam case, including $1,060 for an attorney with 25+ years experience, and $900 for attorneys with 15 to 24 years experience, finding these rates were not unreasonable given the characteristics of and duration of the case.); *United States v. OrthoGeorgia*, 407 F. Supp. 3d 1330 (M.D. Ga. 2019) (finding an hourly rate of $750.00 to be reasonable in a qui tam case and rejecting the argument that the court is "strictly bound" by local prevailing rates.)

As a result of the need for specialized skills and experience, the dearth of qualified counsel, and the marketplace for False Claims Act legal services, attorneys who practice in this arena command fees at a premium. Indeed, non-contingent hourly rates paid to defense counsel in qui tam actions under the False Claims Act demonstrates rates above those claimed by Relator's counsel here.

9

Survey data, court filings and industry reports indicate rates above the rates claimed by Relator's counsel here, with reports of partner hourly rates from $1,100 to $1,695, and associate rates above $1,000. Finally, fees paid to counsel working on a contingent basis must reflect market treatment for contingent risk.

> [A] true marketplace rate in a False Claims Act case would be what competent counsel's expectations of an hourly rate would be at the time of the filing of the case understanding that payment will be made only after success is achieved, and only after the defendant is given the opportunity to challenge the amount requested, and where the judge or an appellate court may reduce the amount required, and where payment may not come until this process is concluded. In such cases, that rate would be substantially greater than a rate where payment was guaranteed on a monthly basis regardless of whether the case was won or lost. [House Report, 132 Cong. Rec. H9382_03, 1986 WL 786917 (Cong.Rec.) (emphasis supplied).]

These marketplace realities are a matter of record. Considering the contingent risk of this lengthy complex litigation, a fully reasonable fee according to the expectations of these trial lawyers would be a multiple of the claimed rate. Counsel here are claiming rates that are consistent with or lower than rates paid to lawyers where payment was guaranteed on a monthly basis regardless of whether the case was won or lost.

As with other fee-shifting statutes, under the False Claims Act, relators' counsel are entitled to fees for work establishing, and collecting, reasonable fees. *See United States ex rel. Simring v. Univ. Physician*, 2013 U.S. Dist. LEXIS 179451 *4 (D.N.J. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981-983 (9th Cir. 2008) ("Fees on fees" must be determined by the same lodestar methodology, and downward adjustments are to be used only in "rare" cases). Relator's counsel were required to spend time drafting this motion seeking fees because Murdock refused to engage in discussions to reach agreement.

In sum, the Court should award reasonable attorneys' fees at the rates claimed by Relator's counsel in this case, taking into consideration the current value of their services, their particular experience and the marketplace for specialized skills, the high rates charged by attorneys

specializing in qui tam cases and the substantial contingent risk in this case.

## IV.     RELATOR'S COUNSEL ARE ENTITLED TO REIMBURSEMENT FOR EXPENSES AND COSTS UNDER §3730(D)(1)

Relator is entitled to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' ... costs." As detailed in counsel's declaration, counsel necessarily and reasonably incurred $1,849.60 in costs and expenses in this case, consisting of filing fees and expenses incurred in traveling to the Relator's interview in Greenville. *See* Fein Decl., ¶5. Each cost item was necessary and recorded according to counsel's accounting procedures. Additional documentation evidencing such costs may be filed or otherwise disclosed at the Court's direction.

## V.     CONCLUSION

For the foregoing reasons, Relator requests that the Court award $78,869.60 (consisting of $77,020 for attorney's fees and $1,849.60 for expenses) to be paid by Defendant Kevin Murdock, plus additional fees for work expended to the extent any future work is required.

Dated: July 28, 2025.

Respectfully submitted,

/s/ Herbert W. Louthian, Jr.
Herbert W. Louthian, Jr. (Fed ID #2729)
bert@louthianlaw.com
LOUTHIAN LAW FIRM, P.A.
P.O. BOX 1299
Columbia, SC 29202
Telephone: (803) 454-1200
Facsimile:  (803) 256-6033

Attorneys For Susan Mathewson, as
personal representative of Estate of Karen
Mary Mathewson

11

## CONSULTATION CERTIFICATE

The undersigned counsel affirms that Relator's counsel complied with Local Rule 7.02 by conferring with opposing counsel via email. No opposing counsel has responded that they are opposed to this Motion.

<u>/s/ Herbert Louthian</u>
Herbert Louthian