**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| United States of America, State of Georgia, State of Colorado, and State of South Carolina e*x rel*. Susan Mathewson, as Representative of Estate Of Karen Mathewson | C.A. No. 6:18-cv-00165-TMC |
| Plaintiff-Relator | |
| v. | |
| Premier Medical, Inc. Kevin S. Murdock, Freedom Medical Labs, LLC, Robert Alan Richardson, And Edward Burch, | |
| Defendants. | |

**DECLARATION OF CORY FEIN IN SUPPORT OF MOTION FOR AWARD OF
REASONABLE EXPENSES, ATTORNEYS' FEES AND COSTS**

I, Cory S. Fein, declare as follows:

1.      My name is Cory S. Fein.  I am over 21 years of age, of sound mind, capable of executing this Declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2.      I am the founder and owner of the Cory Fein Law Firm and I am lead counsel for Relator in the above-styled proceeding.

**I.      TIME DEVOTED TO LITIGATION**

3.      This declaration is submitted concurrently, and in support of, Relator's Motion for Award of Reasonable Expenses, Attorneys' Fees and Costs under the False Claims Act (the "Motion").

4.      The factual discussion of my work in this litigation descried in the Motion is true and correct.

5.    My case expenses are **$1,849.60**, consisting of filing fees, pro hac vice fees, and travel expenses (hotel, airfare, parking, meals) incurred in traveling to the Relator's interview in Greenville.

6.    My attorney's fees as of July 27, 2025 are **$73,120**, calculated using my standard billing rate of $800 per hour multiplied by the 91.4 hours I recorded working on the case.

7.    I have subtracted $1000 from this total to account for attorney's fees I recovered from a small settlement in this case involving a minor defendant, Michael Conroy, in 2024.

8.    The attorney's fees of my co-counsel, Bert Louthian, are **$4,900**, calculated using his standard billing rate of $500 per hour multiplied by the 9.8 hours he recorded working on the case.

9.    The actual amount of time I devoted to the case is actually higher than I recorded. I chose not to record much of the time I spent monitoring this lawsuit and the other associated litigation (for example, bankruptcy proceedings of defendants in this case.)

10.    Upon request, I will submit my detailed billing records the Court. Because they include attorney work-product and attorney-client privileged information, I cannot share them with counsel for Defendants without making significant redactions. I disclosed my fee request to counsel for Defendant Murdock who has raised no dispute and has neglected to respond to my requests to confer.

**A.    The hours expended were actually expended on the topics and activities stated.**

11.    I hereby verify that these 91.4 hours, as reported in my billing spreadsheet (available upon request), were actually expended on the activities and topics stated therein. I contemporaneously recorded my time electronically which was used to generate my billing spreadsheet.

2

12. My co-counsel and I worked on this case for about 94 months, from intake in October 2017 to the present. We seek recovery for only 101.2 hours of work, which amounts to barely more than one hour per month.

**B.      The hours expended were reasonable.**

13. The number of hours devoted to this litigation was reasonable. I avoided duplication of efforts. Courts have been critical of multiple attorneys doing overlapping work on a case, billing for conferences among multiple attorneys, and multiple attorneys working on the same projects, reviewing the same documents, and attending the same hearings. I avoided this as evidenced by the small number hours recorded by my local counsel.

14. Most of the time my co-counsel and I expended was in the early years of the case.

15. In the recent years, I mostly just conferred with the Government attorneys, and monitored the progress of the case.

16. After intake investigation, research and interviews with Relator, I performed the work needed to draft and file the Complaint.

17. I also drafted and served on the government a "written disclosure of substantially all material evidence and information" Relator possessed.

18. I made a pre-filing disclosure on the government in January 2018, filed the complaint under seal in February 2018, and the served the Complaint along with the mandatory disclosure statement and exhibits on the United States.

19. My client, co-counsel and I met with Government lawyers in person at the US Attorney's Office in Greenville on February 18, 2018. We spent time preparing for this meeting and debriefing after the meeting as well.

20. The Relator and I continued working with the Government attorneys including providing contact information for key witnesses, and further explaining details of the false billing

schemes.

21. I continued conferring with the Government lawyers, primarily Beth Warren, and working with Relator (and the representatives of Relator's estate) throughout the many twists and turns this litigation has taken over the past 7+ years.

22. I exercised billing judgment in determining the number of hours used to calculate the lodestar.

### C. Billing Rates Used to Calculate Lodestar Are Reasonable

23. The rate I used in calculating my lodestar was $800 per hour, a rate that is far below the rates of experienced qui tam lawyers working at the major national firms and is in line with, or even slightly lower than, the rates charged by other qui tam attorneys with comparable legal experience.

24. My current billing rate, used for purposes of calculating the lodestar, is based on prevailing fees for national complex qui tam litigation. The use of national rates is appropriate in light of the fact that this action required specialized expertise in representing whistleblowers.

25. In setting my billing rate, I have reviewed Court orders awarding fees in qui tam cases, and submissions from other attorneys with 30+ years of experience who focus their practice on representing relators in qui tam cases.

26. For example, I note the Court's opinion in *United States v. AthenaHealth, Inc.*, No. 17-12125, 2022 U.S. Dist. LEXIS 38378, *20 (D.Mass March 3, 2022), where the court found the qui tam relators' counsel's hourly billing rates of $1,060 for an attorney with 25+ years' experience, and $900 for attorneys with 15 to 24 years' experience were not unreasonable given the characteristics of and duration of the case.

27. *See also Weiss ex rel. United States v. United Seating & Mobility LLC*, No. CV-20-01573-PHX-SPL, 2024 U.S. Dist. LEXIS 195191, at *24 (D. Ariz. 2024) (finding that $950/hour

4

is a reasonable billing rate for law firm partners in qui tam cases); *United States ex rel. Simpson v. Bayer Corp.*, No. 0:08-cv-5758, 2024 U.S. Dist. LEXIS 61508, at *18 (D. Minn. Jan. 25, 2024) (approving rate of $860 per hour for qui tam lawyer with 20+ years of experience); *United States ex rel. Bisbano v. Claris Vision, LLC*, No. 18-00176-MSM, 2024 U.S. Dist. LEXIS 99775, at *7 (D.R.I. June 5, 2024) (recommending proposed rates of $950.00, and $750 for qui tam counsel); *United States v. AthenaHealth, Inc.*, CA No. 17-12125-NM, 2022 U.S. Dist. LEXIS 38378, 2022 WL 658654, *7-8 (D. Mass. Mar. 3, 2022) (approving hourly rates in a qui tam case, including $1,060 for an attorney with 25+ years experience, and $900 for attorneys with 15 to 24 years experience, finding these rates were not unreasonable given the characteristics of and duration of the case.); *United States v. OrthoGeorgia*, 407 F. Supp. 3d 1330 (M.D. Ga. 2019) (finding an hourly rate of $750.00 to be reasonable in a qui tam case and rejecting the argument that the court is "strictly bound" by local prevailing rates.)

28.     My current rate of $800 per hour is only $150 more than a rate that was approved for me more than 10 years ago, in 2014.

29.     On January 21, 2014, District Court Judge Margaret M. Morrow specifically approved my rate of: "$650 per hour for senior partner Cory S. Fein (honors graduate of the University of Texas Law School with 18 years of experience)." *See* Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement and Request for Attorneys' Fees, Expenses, and Incentive awards. *Keegan v. Am. Honda Motor Co*, No. CV 10-09508 MMM (AJWx), 2014 U.S. Dist. LEXIS 197404, at **64-69 (C.D. Cal. Jan. 21, 2014). Judge Morrow analyzed the rate based on my experience and rates approved in other decisions. Based on this analysis, "the court determines that the hourly rates requested for both the partners and associates in this case are reasonable." *Id*. at *68.

30.     More than 12 years ago, in December 2012, after resolving a high profile and complicated *qui tam* action (*United* States *of America, ex. rel. Ivey Woodard v.* DaVita *Inc.*, United States District Court for the Eastern District of Texas, Civil Case No. 1:05-CV-00227-MAC-ZJH), the Department of Justice approved attorneys' fees that were based on Cory Fein's current rates. In *DaVita*, the Department of Justice approved the entire requested fee, which included a $650 rate for Cory Fein.

## II.     BACKGROUND

31.     I am a litigation attorney with more than thirty years of experience.  I am a 1991 graduate of the University of Texas Law School, with honors, and a 1988 graduate of the University of Texas with high honors.  I am licensed to practice law in all state and federal courts in Texas and California, and am admitted to practice in multiple additional federal district and appellate courts, as well as the United States Supreme Court.

32.     Thomson Reuters named me as a Super Lawyer in 2015-2025, and as a Rising Star in 2004, 2005 and 2007 as published in Texas Monthly magazine. H Texas Magazine named me as one of Houston's Top Lawyers in multiple years from 2014 through the present.

33.     In 2017, after being nominated by a Harris County District Court judge, I was elected as a Fellow of the Texas Bar Foundation, in recognition of outstanding professional service and notable contributions to the system of justice and the people of Texas (an invitation limited to the top 1/3 of 1% of Texas lawyers each year.)

34.     I founded Cory S. Fein, PC in 2013, which does business under the name "Cory Fein Law Firm."  My firm offices in Houston, Texas.

35.     Before founding my own law firm, I practiced law with Caddell & Chapman in Houston, Texas.  During more than 13 years with Caddell & Chapman, most recently as a partner, I established an outstanding record representing primarily plaintiffs in complex litigation across

the United States Caddell & Chapman has an outstanding record representing primarily plaintiffs in complex litigation across the United States.

### A.     Experience Representing Whistleblowers

36.     The primary focus of my practice is representing whistleblowers, like my client in the present matter. This representation includes representing them in *qui tam* cases (involving the False Claims Act and similar statutes) where my clients and I seek to recover money on behalf of the Government, as well as matters where my client seeks damages suffered as a result of being retaliated against for protected whistleblowing activity.

37.     I represent clients who engage in activity protected by multiple statutes, including the federal False Claims Act. I pursue these cases in federal courts, state courts, and arbitrations in various venues.

38.     I have successfully recovered damages for numerous clients under these statutes. A few recent examples are listed below.

39.     I successfully settled claims of my client against a behavioral health hospital, alleging that she was terminated as retaliation for activity protected by TEX. HEALTH & SAFETY CODE § 161.134(a) and the False Claims Act 31 USC § 3730(h)(1). Settlement was finalized in 2023.

40.     I am lead counsel for the first-filed whistleblowers in a False Claims Act qui tam case filed in 2020 against Modern Vascular and associated individuals and companies. (Case No. 2:20-cv-00176, District of Arizona.) The Department of Justice intervened in 2022 and filed a Complaint in Intervention noting damages exceeding $50 million. The case is proceeding. *See* www.justice.gov/opa/pr/united-states-files-false-claims-act-complaint-against-chiropractor-modern-vascular-office;     searchlightnm.org/united-states-files-complaint-against-modern-vascular-and-owner-yury-gampel/;     www.azcentral.com/story/news/local/arizona/2022/12/14/

modern-vascular-accused-of-50m-fraud-scheme-justice-department-complaint/69726238007/.

41.    I am lead counsel in a False Claims Act qui tam case that resulted in an $8.88 million settlement, unsealed in August 2024. *United States ex rel. J.R., M.D., v. Andrew Gomes, et al.*, No. 4:18-cv-04650, S.D.Tex. The settlement alleges that Dr. Andrew Gomes and his affiliated companies (known as National Interventional Radiology Partners PLLC or NIRP) established a network of peripheral arterial disease (PAD) office-based labs that were engaged in an illegal kickback scheme involving podiatrists and doctors investing in PAD labs and referring patients to the labs in order to increase the value of their investments. The complaint alleged Gomes established and developed multiple PAD clinics in Texas by recruiting podiatrists and primary care physicians to invest in the clinics and refer patients to the clinics to maximize the value of their investments. The procedures performed at these clinics (including arteriograms, angiograms, angioplasties and atherectomies) are highly compensated procedures. The DOJ's press release is available at: https://www.justice.gov/usao-sdtx/pr/nirp-and-founder-pay-nearly-9m-resolve-alleged-kickback-referral-violations.

42.    I was co-counsel for the whistleblower in a case against a surgery center alleged to have filed false claims with Medicare and other government healthcare programs. Allegations included false billing for "incident to" services, falsely representing that services provided by nurse practitioners were provided by physicians, false billing for level 3 or 4 office visits that merely involved medication refill phone calls between patients and nurses; false billing for both an office visit and a scheduled procedure with a patient on the same day, when the office visits did not involve a significant, separately identifiable evaluation and management service; false billing for ultrasound-guided procedures, when no ultrasound was used; false billing for office visits with existing patients as office visits with new patients; and retroactively falsifying medical records to

match fraudulent bills. Suit was filed in federal court in 2020, and settled in 2022, resulting in recovery to the Government and payment to whistleblower client.

43.    I was lead counsel in 2022 pre-suit settlement by psychiatrist client alleging she was fired in retaliation for protesting false billing practices including having psychiatrists sign blank lab order forms used to order medically unnecessary diagnostic lab testing, and renewing prescriptions without physician approval. Claims included violation of Texas law precluding hospitals and other health facilities from retaliating against employees for reporting a violation of law or agency rule. TEX. HEALTH & SAFETY CODE § 161.134(a), and Section 3730(h) of the False Claims Act providing a cause of action for those discharged, or otherwise retaliated against for their efforts to stop violations of the False Claims Act, including submitting false claims to government healthcare programs.

44.    I was lead counsel in a 2022 pre-suit settlement for four truck drivers alleging violations of Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105, claiming they were fired in retaliation for refusing to drive excessively long shifts, without adequate rest periods, in violation of Federal Motor Carrier Safety Administration ("FMCSA") regulations, 49 CFR §§ 395.3. Claims settled during mediation.

45.    I was lead counsel for a terminated employee of a Fortune 500 company, alleging wrongful termination in violation of the whistleblower protection provisions of the Sarbanes-Oxley law (i.e., SOX), 18 U.S.C. §1514A(b)(1)(B). Allegations included protected activity in reporting false designation of country of origin, use of counterfeit marks, wire fraud and mail fraud. SOX retaliation claim lodged with the U.S. Department of Labor's OSHA division, followed by lawsuit filed in federal court in 2020. Lawsuit settled in 2022 during mediation.

46.    I was lead counsel for a Finance Director of city in Texas who alleged she was

terminated in violation of the Texas Whistleblowers Act for her reports of violations of law by city employees. Case filed in Galveston County district court in 2021. Settlement reached in 2022 during mediation.

47.     I was lead counsel in a suit filed in federal court in 2021 on behalf of a speech therapist whistleblower alleging that she was retaliated against for opposing false billing of government healthcare programs in violation of the False Claims Act. I filed suit against her former employer, a company that owned multiple skilled nursing facilities, and reached settlement in 2022 during mediation.

48.     I was lead counsel for a terminated employee alleging she was retaliated against for her opposition to false claims submitted to the Government associated with using funds from PPP loans for unapproved purposes. I reached a pre-suit settlement during mediation in 2021.

49.     As lead counsel for a whistleblower in South Carolina, I filed a qui tam case in 2017 against multiple medical centers, labs and doctors alleging violations of Stark law, and false claims submitted to government healthcare programs. The Department of Justice intervened in the case, resulting in significant judgments in 2021, including more than $95 million against one group of defendants, and more than $24 million against another group of defendants. Case No. 6:15-01589, 6:17-cv-01190, D.S.C.2021 (Dkt. No. 447.)

50.     I took over lead counsel role for whistleblower who filed False Claims Act case against imaging center in California in 2019, after Government declined to intervene. Allegations included falsely billing Government payors for professional services related to radiologist interpretation of bone density scans. I negotiated a settlement in 2021, resulting in payment to the Government, and to my whistleblower client.

51.     I settled a False Claims Act retaliation case on behalf of a Director of Nursing who

alleged her nursing home employer retaliated against her for opposing the billing of Medicare for unnecessary genetic testing. Case filed January 2020 and settled in September 2021.

52.    I settled a False Claims Act retaliation case involving allegations that a home health company terminated an employee in retaliation for her opposition of false claims submitted to Government healthcare payors. Allegations included fabricated data, expired prescriptions, expired Certificates of Medical Necessity, and billing for amounts beyond approved by physicians. Case filed in August 2018 and settled in April 2020.

53.    I represented an account executive and successfully settled claims alleging retaliation against my client for opposing false claims to Government payors related to medical products in 2020.

54.    I successfully settled False Claims Act retaliation claims on behalf of an employee who was terminated allegedly in retaliation for opposing false claims submitted to the Government regarding HUD grant funds in 2020.

55.    I successfully settled claims of two nurses who were terminated from a medical facility, allegedly as retaliation for opposing dangerous practices that put patients and staff in danger in 2020.

56.    I successfully settled claims of an employee who was wrongfully terminated in retaliation for false claims submitted for psychological care of military veterans in 2020.

57.    In August 2017, in conjunction with the United States, I settled a lawsuit I brought in 2014 on behalf of a whistleblower client, a former employee of a chain of nursing homes. As a result of the settlement, the defendants reimbursed the Government more than $600,000. I filed the suit, Case No. 4:14-cv-02948, in the U.S. District Court for the Southern District of Texas, Houston Division, and it was pursued by the United States Department of Justice on behalf of the

United States Department of Health and Human Services' Office of Inspector General (OIG-HHS) and the Texas Office of the Attorney General and Texas Health and Human Services Commission. The suit alleged that the defendants knowingly submitted false and fraudulent claims for payment to Medicare, Medicaid and other government-funded programs relating to rehab services. The alleged conduct included rounding up the amount of rehab therapy provided to nursing facility residents, in order to qualify for the highest RUG level (which required at least 720 minutes of therapy per week), which resulted in higher Medicare, TRICARE, and Medicaid reimbursement to the facility.

58.     In January 2017, in conjunction with the United States, I settled a lawsuit I brought in 2013 on behalf of a whistleblower client, a former employee of the defendant, Advanced Containment Systems, Inc. As a result of the settlement, the defendants, Advanced Containment Systems, Inc., and Boh Environmental, LLC, paid more than $2.48 million. The case is No. 4:13-cv-02330, in the U.S. District Court for the Southern District of Texas, Houston Division, and was pursued by the United States Department of Justice on behalf of the United States Department of Defense (DoD), and the Defense Logistics Agency (DLA), which handles purchasing for the DOD. The lawsuit included allegations that the defendants were contractually obligated to obtain ISO Quality Management System certifications and that they represented to DLA that they had obtained such certifications when they had not.

59.     In July of 2016, along with my co-counsel, I successfully recovered a $9.5 million settlement for false Medicare claims submitted by the largest health care provider in Reno, Nevada. The case, filed in 2012 in the U.S. District Court for Nevada, is styled *United States ex rel. Cecilia Guardiola v. Renown Health, et al*; No. 3:12-cv-00295. We represented Cecilia Guardiola, a registered nurse who discovered that Renown had a systematic problem billing Medicare for

inpatient claims that should have been categorized as outpatient claims. After the United States decided not to intervene in the case, my co-counsel and I continued to pursue the case without the Government, as allowed by the False Claims Act, resulting in the successful recovery.

60.    While a partner at Caddell Chapman, I worked on a qui tam case filed in the Eastern District of Texas against dialysis provider DaVita. The firm represented a whistleblower, Ivey Woodard, who accused DaVita of over-administering the drug Epogen to exploit Medicare reimbursements. The case settled for $55 million in July 2012. The claim was that DaVita was administering so-called overfill — an extra quantity of a drug in each vial, required by law to ensure full doses are given — of Epogen to patients and fraudulently seeking reimbursement from Medicare for the overfill. The whistleblower was awarded the maximum relator's share of 30%. The case was *USA ex rel. v. DaVita Inc.*, Case number 1:05-cv-00227, in the U.S. District Court for the Eastern District of Texas.

61.    I served as a guest lecturer on class actions and qui tam litigation in Adj. Professor Charles Brown's class at the University of Houston Law School during the Spring 2015 and Spring 2017 semesters.

62.    Additional information concerning my experience and expertise is available at my website, (www.coryfeinlaw.com).

**B.    Class Action Experience**

63.    I am currently lead counsel for plaintiffs and a putative class of insureds in Arizona in a case alleging improper depreciation of labor costs when paying property insurance claims. In 2021, the Arizona District Court certified two questions of law to the Arizona Supreme Court. *Walker v. Auto-Owners Ins. Co.*, Civ. 20-449-TUC-CKJ (D. Ariz. Sep. 30, 2021). In 2022, the Arizona Supreme Court answered the questions in favor of plaintiffs. *Walker v. Auto-Owners Ins. Co.*, 517 P.3d 617 (Ariz. 2022).

64.     I served as lead counsel for Plaintiff and a certified class of individuals in Texas asserting claims under the federal Driver's Privacy Protection Act. I successfully obtained class certification, over the defendant's objection. I obtained a $12.362 million judgment in favor of certified Plaintiff class. *Sistrunk v. TitleMax, Inc.*, 5:14-CV-628-RP, at *24 (W.D. Tex. Aug. 17, 2017), and I obtained final approval of a post-judgment class action settlement. *Sistrunk v. TitleMax, Inc.*, 5:14-CV-628-RP (W.D. Tex. Feb. 22, 2018).

65.     During my tenure at Caddell & Chapman, I assumed primary responsibility for multiple cases, primarily class actions, which resolved successfully. Even while representing my clients zealously, I have maintained an excellent reputation as an ethical attorney. In May 2013, in conjunction with his analysis of the work done by my partners and me in the *In re Navistar Diesel Engine Products Liability Litigation MDL No.* 2223 pending in Chicago (where Michael Caddell served as Lead Counsel, and I chaired the Discovery Committee), prominent class-action expert Professor Geoffrey Miller attested: "I am familiar with the Lead Counsel, Caddell & Chapman, and consider the attorneys at that firm to be among the finest class action attorneys I have encountered in more than a quarter century of work in this area," "I know Counsel to be highly ethical attorneys," and "Lead Counsel, with the assistance of the Court, performed admirably."[1] In that same case, Harvard Professor William Rubenstein (frequent class-action commentator and sole author of *Newberg on Class Actions*) described the settlement my firm negotiated with Ford as "a terrific settlement providing significant value to the class easily warrant[ing] . . . final

---

[1]  Miller Declaration, filed in *In re: Navistar 6.0 L Diesel Engine Products Liability* Litigation, No. 1:11-cv-02496 (N.D. Ill.), ECF Dkt. No. 278-10, May 15, 2013.

approval."[2]

66.    While at Caddell & Chapman, my typical role in class action litigation was as the primary attorney in charge of litigation on cases in which Caddell & Chapman was designated as lead or co-lead counsel (or in another leadership position).

67.    In the last several years I served as Class Counsel (in conjunction with Caddell & Chapman, before I started my own law firm) and I represented classes in about a dozen cases, including:

*In re Navistar Diesel Engine Products Liability Litigation*, an MDL class action proceeding, referenced above, I was the primary attorney at Caddell & Chapman tasked with representing the Plaintiff class. The MDL consolidated about 35 cases from around the country (Michael Caddell was Lead Counsel and I was chair of the Discovery Committee). A settlement was approved on July 2, 2013, by Federal District Judge Matthew J. Kennelly ("the settlement can be viewed as paying roughly 50% of the full value of the class members' claims, were they to succeed" and is "clearly fair") in Chicago, Illinois. It provided partial reimbursement for post-warranty engine repair costs incurred by a class of over 1 million current and former owners of Ford vehicles equipped with 6.0-liter PowerStroke diesel engines, and attorneys' fees of $12.8 million were awarded on August 11, 2013 (approving the "relatively modest" lodestar multiplier of 1.25);

*Bank Overdraft MDL*. In conjunction with co-counsel, I represented a class of bank account holders in a case involving improper overdraft charges. On August 10, 2012, my co-counsel and I prevailed in certifying a class, were successful in defeating a subsequent Rule 23(f)

---

[2] Rubenstein Declaration, filed in *In re: Navistar 6.0 L Diesel Engine Products Liability Litigation*, No. 1:11-cv-02496 (N.D. Ill.), ECF Dkt. No. 278-7 at 2, May 15, 2013

interlocutory appeal to the Eleventh Circuit, and reached a settlement which was approved in Florida federal court in 2014;

*Polybutylene insurance class action*. I took the lead role in a class action on behalf of a class of insureds in a case involving underpayment of insurance benefits to Arizona homeowners with leaking polybutylene pipe systems. I successfully obtained class certification in the District Court of Arizona and withstood an interlocutory challenge of class certification to the Ninth Circuit Court of Appeals. After prevailing on summary judgment motions, I successfully resolved the case for the class members in April 2015;

*Webhosting class action*. I took the lead role in representing a class of website owners in a class action against a web hosting company involving improper price increases, which resulted in a court-approved settlement for a nationwide class in 2016;

*Vehicle brake wear class action*. I worked with my partners at Caddell Chapman and our co-counsel in representing a class in a class action in California federal court against a vehicle manufacturer involving a defect leading to premature wear of brake pads and other braking components, which resulted in a court-approved class action settlement in 2015;

*Online car rental class action*. I served as sole lead counsel for a class of persons who rented vehicles through an online website for use outside of the United States and alleged that insurance fees and taxes were improperly disclosed. I successfully obtained a class action settlement for a nationwide class, which settlement was approved by a Northern District of California federal court in July 2014;

*Vehicle tire wear class action*. I was the responsible attorney for Caddell & Chapman, co-counsel for a class of vehicle owners who alleged their tires wore prematurely and irregularly as a result of improperly designed rear suspension. We successfully obtained class

16

certification, defended it against interlocutory appeal, after which we negotiated a settlement which obtained final approval in a Central District of California federal court in January 2014;

*Property insurance underpayment class action*. I served as lead counsel for a nationwide class of insureds alleging that they were underpaid on their property loss claims due to improper calculation of payment amounts. The settlement provided repayment of 100% of the alleged underpayment, plus interest, and obtained final approval by a Central District of California federal court in March 2014;

*Beverage class action*. I was primary counsel at Caddell & Chapman, serving as co-lead counsel in a case against two major beverage manufacturers, which resulted in a settlement for a nationwide class of consumers. The settlement obtained final approval on August 31, 2012, in Los Angeles Superior Court;

*Ambulance engine class action*. I was the primary attorney at Caddell & Chapman in *Williams Ambulance et al. v. Ford Motor Co.*, a settlement that obtained final approval from Federal District Judge Marcia Crone on July 2, 2009 in the Eastern District of Texas, in which the owners of some 20,000 defective ambulances—utilizing the same diesel engine at issue in the *In re Navistar* case—were eligible to obtain substantial compensation from Ford in the form of extended warranties, reimbursements for repairs, and enhanced service.

*Marketing list class action*. I was the primary attorney at Caddell & Chapman representing the Plaintiff class in *In re Trans Union Corp. Privacy Litigation*, Case 1:00-cv-04729, MDL Docket No. 1350, N.D. Illinois, one of the largest class actions in history including more than 190 million class members, where the settlement was approved by Judge Robert Gettleman on September 17, 2008, and prominent class action expert Professor Geoffrey Miller stated "[h]aving worked closely with [Caddell & Chapman], I can also attest that they are among the

17

finest class action attorneys I have been privileged to know during my two decades of experience in this field of law. They not only possess excellent analytical and rhetorical skills, but—more importantly—displayed remarkable qualities of judgment, imagination and persistence."

*Property insurance class action*. I was the primary attorney in *Hardy v. Hartford*, a settlement providing injunctive and monetary relief to a nationwide class of Hartford insureds with respect to the payment of General Contractor's overhead and profit on property damage claims, approved by Judge Bury of the Federal District Court of Arizona on June 18, 2008.

68.     In 2016, I settled a lawsuit against the Florida Department of Transportation brought in 2014 on behalf of a Florida truck driver and a putative class of others who were overcharged as a result of drivers having the number of axles on their vehicles miscounted and being charged for vehicles that did not belong to them. The settlement included a refund of overcharges for my client and an agreement to better inform all drivers about errors that occur in toll charges and how to dispute them.

### C.     Additional Experience

69.     Michael Caddell and I also served as Lead Counsel in *In re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litigation*, an MDL proceeding (Case No. MDL-1718) pending in the Eastern District of Michigan, where I took the lead role in facilitating a double-tracked, multi-party mediation that resulted in more than 100 settlements of cases involving vehicle fires.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

DATED:  July 28, 2025, in Houston, Texas.

/s/ Cory S. Fein
Cory S. Fein

18